IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MICHIGAN
EASTERN DISTRICT

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation; FIELDTURF TARKETT INC., a Canadian corporation, | CIVIL ACTION NO. |
| Plaintiffs, | District Judge: |
| v. | Magistrate Judge: |
| ASTROTURF, LLC, a Michigan limited liability company, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

The Plaintiffs, FieldTurf USA, Inc. and FieldTurf Tarkett, Inc. (collectively referred to herein as "FieldTurf"), for their complaint against the Defendant Astroturf, LLC (referred to herein as "Defendant Astroturf"), state as follows:

## PARTIES AND NATURE OF ACTION

1. Plaintiff FieldTurf USA, Inc. is a corporation organized and existing under the laws of the State of Florida, with a principal place of business in Montreal, Quebec, Canada. FieldTurf USA, Inc. manufactures, sells and installs synthetic turf products throughout the United States, including throughout the State of Michigan.

2. Plaintiff FieldTurf Tarkett Inc. is a corporation organized and existing under the laws of Canada, with its principal place of business in Montreal, Quebec, Canada.

3. FieldTurf Tarkett Inc. is the owner by assignment of all right, title, and interest in U.S. Patent No. 6,723,412, entitled "Synthetic Turf" issued on April 20, 2004 by the U.S. Patent and

1

Trademark Office ("the '412 patent").  A true and correct copy of the '412 patent is attached hereto as Exhibit 1.

4. Shortly after its issuance, the '412 patent was "reexamined" by the U.S. Patent and Trademark Office at the request of a third party.  After a lengthy reexamination procedure, wherein numerous U.S. and foreign prior art references were cited and analyzed, the U.S. Patent and Trademark Office confirmed the patentability of all of the claims of the '412 patent exactly as originally issued.  A true and accurate copy of Reexamination Certificate No. 6,723,412 C1 is attached hereto as Exhibit 2. (Inasmuch as the Reexamination Certificate reflects that the reexamined claims are identical to those of the original '412 patent, only reference to the '412 patent will be necessary for purposes of the present complaint).

5. FieldTurf USA, Inc. is the exclusive licensee from FieldTurf Tarkett Inc. under the '412 patent for the right sell, make, use, offer to sell, and install synthetic turf products in the United States.  This exclusive right includes the right to sub-license others, and to initiate legal action against infringers of the '412 patent.

6. Defendant Astroturf, upon information and belief, is a Michigan limited liability company, with a principal place of business in Rochester, Michigan, and was previously operating under the name General Sports Venue, LLC.  (See, Exhibit 3).  In addition, upon information and belief, Defendant Astroturf maintains a regional office in Detroit, Michigan (See Exhibit 4).  Defendant Astroturf sells and installs synthetic turf surfaces -- usually in response to solicitations for bids for same.

7. The basis of this Complaint arises out of Defendant Astroturf's unlawful and infringing offers to sell, actual sales, and installations of synthetic turf surfaces that infringe one or more claims of the '412 patent.

## JURISDICTION

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal question) and 28 U.S.C. §1338(a) (arising under the patent laws of the United States, 35 U.S.C. §§101 *et seq*.).

9. This Court has personal jurisdiction over Defendant Astroturf because, upon information and belief, Defendant Astroturf transacts business in this district, at least some of the acts complained of herein occurred in this district, and Defendant Astroturf maintains an office in Dearborn, Michigan.

## VENUE

10. Venue is proper in this Court under one or more of 28 U.S.C. §1391(b), 28 U.S.C. §1391(c), and 28 U.S.C. §1400(b).

## HISTORY OF SYNTHETIC TURF GRASS

11. Synthetic grass surfaces, also known as "artificial turf," or "synthetic turf" are widely used on playing fields for a variety of sporting activities, including soccer and football. Synthetic grass surfaces are designed to duplicate and improve upon the properties of natural grass surfaces while providing better durability, reducing the maintenance costs, and allowing for more intensive use of the playing field.

12. The first synthetic grass surfaces were installed in university and professional stadiums in 1966. Since these early installations, it has become clear that some types of synthetic surfaces may result in injuries to players. These surfaces can be so hard that they do not provide enough shock absorbency; over time the weave of the fibers may cause a player's cleats to lock in the synthetic surface and cause a severe knee or ankle injury; and, abrasiveness of the fibers may cause skin burns. Because of these problems, owners and operators of sports fields have sought

safer synthetic grass surfaces. In response, the industry, and more particularly FieldTurf, has focused on developing synthetic surfaces that are more like natural grass in that the blades are longer, softer and are held up by an infill material that includes a confirmation of hard and resilient granules.

## FIELDTURF'S SYNTHETIC GRASS

13. After extensive research and development, FieldTurf's predecessor-in-interest began offering a synthetic grass surface in 1993. The current FieldTurf product provides a resilient and forgiving playing surface due to its many innovations, including its ribbon row design and unique particulate infill system ("the FieldTurf product"). Many of these innovations are covered by patents, including the '412 patent. Indeed, among other unique and proprietary attributes, the artificial blades ("ribbons") of grass are attached to a woven backing layer. The ribbons are typically supported by a layered infill system consisting of, for example, a bottom layer of sand, a middle layer of mixed sand and rubber particles, and a top layer of rubber particles. The sand and rubber used in the infill system are premium materials, including rounded silica sand and cryogenically ground rubber. In addition, and as claimed by the '412 patent, the FieldTurf product incorporates a dimensional relationship between the height/length of the ribbons, the spacing ("gauge") between rows of ribbons, and, the depth of the infill relative to the height/length of the particular ribbons. By using these material and formulations, the FieldTurf product is safer than the earlier types of synthetic surfaces, reacts more like natural grass, and is playable even in extremely wet conditions.

14. The FieldTurf product has been very successful in the marketplace. Once players, owners, and others experience playing on the FieldTurf product, they believe that it is superior to other synthetic turf products. Indeed, the FieldTurf product has been installed at numerous high

profile facilities including, National Football League stadiums, for, among others, the Detroit Lions, Indianapolis Colts, Cincinnati Bengals and the New York Giants, as well as at numerous NCAA Division 1 stadiums for such Universities, including, but not limited to the University of Michigan, and many, many others.

## DEFENDANT'S INFRINGING ACTIVITIES

15.     After issuance of the '412 patent, Defendant Astroturf offered for sale, sold and installed synthetic turf products, marketed under several different designations, including, but not limited to GameDay Grass, GameDay Grass 3D, GameDay MT and GameDay Grassp XPe.  Each and every one of such products comprise a substantially similar structural make-up, including the use of parallel rows of synthetic ribbons attached to a backing material, wherein the height/length of the synthetic ribbons are at least two times the distance between adjacent rows of the synthetic ribbons, and, wherein the particulate infill material is filled between the synthetic ribbons to a depth of approximately 2/3 the length of the ribbons.

16.     In response to a request for proposal from Oregon State University, Defendant Astroturf submitted a bid to install a synthetic turf field.  A true and accurate copy of Defendant Astroturf's bid submittal is attached hereto as Exhibit 5.

17.     Defendant Astroturf's bid submittal included an offer to sell Oregon State University three different synthetic turf products, namely, its GameDay Grass MT, XPe and 3D systems -- each for a price certain.  In addition Defendant Astroturf provided product specifications for each of the offered products.  The product specifications associated with all three of the offered synthetic turf products each identifying a synthetic turf product covered by one or more of the claims of the '412 patent.

18. Each and every one of the three synthetic turf products offered for sale to Oregon State University, by Defendant Astroturf, comprise an infringing offer to sell under the '412 patent.

19. Upon information and belief, and according to Defendant Astroturf's website (http://www.astroturfusa.com), Defendant Astroturf has also recently contracted to install a synthetic turf product in South Carolina for a company by the name of Extra Bases, LLC. Attached hereto as Exhibit 6 is a press release from Defendant Astroturf's website representing that the product to be installed for Extra Bases is the GameDay Grass 3D system (the press release inadvertently identifies the install location as "Florida," as opposed to South Carolina).

20. Based upon the product specifications included in Defendant Astroturf's offer to sell to Oregon State University, an offer to sell the GameDay Grass 3D system infringes one or more claims of the '412 patent.

21. Upon information and belief, and according to Defendant Astroturf's website, it has already installed numerous GameDay Grass products (of the type identified above) throughout the U.S.A -- including, but not limited to at least two synthetic turf fields sold and/or installed in Dearborn, Michigan in 2009.  Attached hereto as Exhibit 7 is a listing from Defendant Astroturf's website identifying that the GameDay Grass XPe product was sold and installed at Dearborn High School and Star International Academy, in Dearborn, Michigan.

22. Based upon the product specifications included in Defendant Astroturf's offer to sell synthetic turf fields to Oregon State University, the XPe system infringes one or more claims of the '412 patent.

23. Upon information and belief, and after a reasonable time for discovery, FieldTruf believes that many more infringing products and offers to sell infringing products by Defendant

Astroturf will be uncovered. Accordingly, the specific acts identified herein are not to be deemed an exclusive list of infringing acts by Defendant Astroturf.

## COUNT I – PATENT INFRINGEMENT

24. FieldTurf repeats and incorporates by reference all of the allegations from paragraphs 1 through 23, above, as if fully set forth herein.

25. Based upon the acts complained of herein, Defendant Astroturf has directly infringed the '412 patent by offering to sell infringing products to at least Oregon State University and Extra Bases, LLC. in Florida, in violation of 35 U.S.C. § 271(a).

26. Based upon the acts complained of herein, Defendant Astroturf has directly infringed the '412 patent by offering to sell, selling, and making infringing artificial turf products for at least Dearborn High School and Star International Academy in violation of 35 U.S.C. § 271(a).

27. Based upon the acts complained of herein, Defendant Astroturf, in violation of 35 U.S.C. § 271(b), has induced Dearborn High School and Star International Academy to infringe the '412 patent by providing an infringing product for Dearborn High School's and Star International Academy's use.

28. As a result of Defendant Astroturf's infringement, FieldTurf is entitled to at least a reasonable royalty under 35 U.S.C. § 284, adequate to compensate for the infringing products already installed.

29. As a result of Defendant Astroturf's infringing offers to sell, FieldTurf is entitled to temporary and permanent injunctive relief under 35 U.S.C. § 283, to ensure that Defendant Astroturf ceases offering to sell, selling, and making infringing products.

30. Upon information and belief, Defendant Astroturf has actual knowledge of the '412 patent, and has elected to disregard FieldTurf's patent rights by: offering to sell an infringing

product; selling an infringing product; and, making an infringing product, such infringement is willful, entitling FieldTurf to recover treble damages and attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

### **RELIEF REQUESTED**

WHEREFORE, the Plaintiffs, FieldTurf USA, Inc. and FieldTurf Tarkett, Inc., request a judgment in their favor and against the Defendant, Astroturf, and request that this Court:

A.   Order, adjudge and decree that Defendant Astroturf has infringed the '412 patent;

B.   Issue a preliminary and permanent injunction prohibiting Defendant and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with it, from infringing any claim of the '412 patent, including, but not limited to, further infringements by offering to sell, selling, installing, and/or directing the installation of any synthetic turf product that infringes any claim of the '412 patent, including, but not limited to, prohibiting Defendant and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with it, from installing any synthetic turf product at: Oregon State University and in Florida for Extra Bases, LLC;

C.   Issue a preliminary and permanent injunction prohibiting Defendant and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with it, from modifying or in any way tampering with any existing synthetic turf fields installed by or on behalf of Astroturf (or any of its predecessor's in interest) since April 20, 2004, by, in any way modifying fiber/ribbon height, spacing between rows of ribbons and/or depth of infill material -- so as to avoid tampering with potential evidence of additional infringements of the '412 patent not yet specifically identified in the present action.

    D.    Award damages for infringement of the '412 patent;

    E.    Declare this case as exceptional within the meaning of 35 U.S.C. §285 and award FieldTurf its attorneys' fees, costs, and expenses that it incurs in prosecuting this action; and

    F.    Provide any further relief as this Court may deem equitable and proper.

### JURY DEMAND

The Plaintiffs demand trial by jury of all issues triable to a jury.

Dated: June 23, 2010

Respectfully submitted,

FIELDTURF USA, INC., a Florida corporation; and FIELDTURF TARKETT, INC., a Canadian corporation,

By:    s/ Jody L. Factor
Jody L. Factor, Esq. (IL Bar No. 6,198,261)
Patrick J. Smith, Esq.
FACTOR & LAKE, LTD
1327 W. Washington Blvd.
Suite 5G/H
Chicago, IL 60607
Phone: (312) 226-1818
Facsimile: (312) 226-1919
Email:    jfactor@factor-lake.com
            psmith@factor-lake.com