UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation; FIELDTURF TARKETT, INC., a Canadian corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>ASTROTURF, LLC, a Michigan corporation,<br><br>        Defendant. | Civil Action No.: 2:10-CV-12492<br><br>Honorable Steven J. Murphy, III<br><br>Magistrate Judge Michael J. Hluchaniuk |

# DEFENDANT ASTROTURF'S RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**Introduction**

The motion for extraordinary relief filed yesterday by Plaintiff is deficient and inappropriate in many ways and should be denied. The reasons for denial of the Motion include the following (as more fully set forth *infra*):

1. Plaintiff FieldTurf USA, Inc. and FieldTurf Tarkett, Inc. ("FieldTurf") have not shown the necessity for the extraordinary relief requested. There is no compelling reason, urgency or equitable reason for the relief FieldTurf is requesting. FieldTurf has delayed filing for the relief requested and is using litigation for competitive reasons, just as it has over 10 times in the past against other competitors.

2. FieldTurf has not shown that they have a substantial chance of success on the merits concerning the validity and the infringement of the asserted patent-in-suit. In fact, Defendant AstroTurf, Inc. ("AstroTurf") has not installed and will not install any field in the future which comes within the scope of FieldTurf's patent.

3. FieldTurf has not shown that it is being, or would be, irreparably harmed by any actions of AstroTurf. There is no "presumption of irreparable harm" as FieldTurf asserts. FieldTurf relies on old law which has been overturned by the U.S. Supreme Court and the Federal Circuit Court of Appeals.

4. The factors of "balance of harm" and "public policy" both favor AstroTurf who would be irreparably harmed if any injunctive relief or restraining order were to be granted. The cities, school districts and communities all require the artificial grass fields to be ready for play at a certain time, and any disruption or delay would adversely affect them. Any such delay would also expose AstroTurf to substantial liquidated damages.

2

**Field Turf Is Not Entitled**
**To Any Equitable Relief**

FieldTurf's Motion can be denied solely on the basis that they have waited too long to request any extraordinary relief. The main document FieldTurf relies upon is an April 24, 2010, document sent by AstroTurf to Oregon State University (see Exhibit 3 to FieldTurf's Motion). FieldTurf does not provide any reason or basis as to why it waited from April 24 to now to bring its motions for a restraining order and injunctive relief. Nowhere does FieldTurf state when they became aware of the April 24 letter, or why they waited until now to file the action and request urgent relief.

Moreover, all of FieldTurf's speculations as to how AstroTurf's artificial grass fields may be constructed stem from the April 24 letter to Oregon State University. FieldTurf has no support or basis that AstroTurf actually will, or is planning on, installing any fields in the future that meet any of the claims of its patent. In fact, the attached Declaration by Jim Petrucelli (**Exhibit A**) shows that none of the fields AstroTurf has installed in the past or will install in the future, will meet the 2/3 "fill" requirement asserted by FieldTurf to be necessary to infringe the '412 patent-in-suit.

**FieldTurf's Motion Is Simply Another Example**
**of Its Litigation Tactics Against Legitimate Competitors**

For years, FieldTurf has filed one legal action after another, including numerous requests for extraordinary relief, in attempts to prohibit competition. FieldTurf has even threatened customers of AstroTurf and others with litigation and injunction.[1]

FieldTurf's questionable tactics are in full bloom in the present case. Not only has FieldTurf delayed in requesting the present relief and not provided AstroTurf adequate time to

---

[1] See list of FieldTurf cases listed in **Exhibit B**.

prepare a response, but FieldTurf sent the Complaint directly to one of AstroTurf's customers, the City of Orlando, a week before it was served AstroTurf. (See Declaration of Joi Philpott, Exhibit C.)

**FieldTurf Does Not Have A Substantial**
**Chance of Success on The Merits**

One of the four factors which must be met in order to succeed on a preliminary injunction motion is for the moving party to affirmatively show that it would succeed on the merits of the case. Here, despite FieldTurf's assertions and speculations, the facts show that FieldTurf will not succeed.

<u>Non-infringement</u>: FieldTurf concedes that the claims in the '412 patent are limited to artificial grass fields in which the "fill" (i.e. the rubber or other particulate matter) is 2/3 the height of the grass "ribbons". All of the AstroTurf installed to date, however, and all those which will be installed in the future, have "fills" on the order of 50-57%. (See Petrucelli Declaration – **Exhibit A**.) FieldTurf has known about AstroTurf and its sale and installation of artificial grass fields since the early 2000s. AstroTurf has been selling and installing its GameDay Grass field since at least 2003. All of these fields have had the same specifications and construction. None have had "fills" of 2/3 the height of the grass "ribbons" - and FieldTurf is aware of it.

FieldTurf's entire motion is based on a request issued by one customer (Oregon State University) which has been expanded by speculation without any support to apply to all of AstroTurf's artificial grass fields in the future. That speculation is simply that - pure speculation.

Thus, for this one reason alone, there has been and cannot be any infringement of the '412 patent.

<u>Invalidity</u>: AstroTurf believes that there are artificial grass fields that were installed prior to the critical date of FieldTurf's '412 patent-in-suit (i.e. prior to October 1996) that meet the claims of that patent. If proven, this would invalidate at least claim 12 which is relied upon by FieldTurf in its Motion papers.[2] AstroTurf needs more time to prove up these prior uses and sales and to take discovery relative to them.

### There Is No Irreparable Injury To FieldTurf

FieldTurf also has to show that it is and will be irreparably harmed if AstroTurf is not enjoined. FieldTurf cannot show that it is being irreparably injured in this case. Monetary damages alone (if validity and infringement are shown) would be sufficient to compensate FieldTurf for any infringement.

On the irreparable harm issue, FieldTurf relies on a "presumption of irreparable harm". That doctrine, however, has been revoked by both the U.S. Supreme Court and the Federal Circuit Court of Appeals. The cases cited by the FieldTurf pre-date the Supreme Court's decision in <u>eBay Inc. v. Merc Exchange, LLC</u>, 547 U.S. 388, 392-94 (2006) which substantially changed the law on injunctive relief in intellectual property cases. Pursuant to the <u>eBay</u> decision, the Federal Circuit in a non-precedential opinion in <u>Automated Merch. Sys. v. Crane Co.</u>, 357 Fed. Appx. 297 (Fed. Cir. 2009), unequivocally clarified that the 2006 pre <u>eBay</u> presumption of irreparable harm based upon a likelihood of success on infringement was no longer valid. The Federal Circuit stated:

> "The burden is now on the patentee to demonstrate that its potential losses cannot be compensated by monetary damage." *Id*, at 301.

---

[2] AstroTurf's defenses of invalidity are based on prior art public uses and sales, none of which can be used in reexamination proceedings. Reexamination proceedings, by statute, can only consider prior art printed publications and patents.

FieldTurf also mentions "price erosion" but has not supplied any support, such as a declaration or statement by any witness, which supports that assertion. AstroTurf also has been competing with FieldTurf for about 10 years and FieldTurf has not reduced its prices in order to compete.

## The Balance of Hardships Also Strongly Favors AstroTurf

The third factor relative to any type of preliminary relief strongly favors AstroTurf and not FieldTurf. AstroTurf has numerous contracts with cities, communities and school districts which require artificial grass fields to be installed and ready for play by this Fall season. These contracts also have liquidated damage provisions which would cause substantial financial harm to AstroTurf if they come into play. Thus, any disruption or delay of these contracts - which FieldTurf seeks to cause - could harm both AstroTurf and its customers substantially and irreparably. (See Philpott Declaration, **Exhibit C**.)

Meanwhile, there would not be any harm to FieldTurf if its requests for extraordinary relief are not granted. FieldTurf has not provided anything but attorney argument on these factors. FieldTurf has not provided any facts, Declarations or witness testimony asserting any type of equitable hardship.

## The Public Interest Also Clearly Favors AstroTurf

The needs and interests of the players, fans, schools, communities and cities all favor allowing AstroTurf to continue to fulfill its contracts and install the artificial grass playing fields as scheduled. As stated above, any disruption or delay could substantially and possibly irreparably harm these members of the public.

The substantial question relative to FieldTurf's success on the merits, both as to invalidity of its patent and non-infringement by AstroTurf, also weigh heavily in the public's interest to be free from unreasonable claims of patent infringement.

## Any Extraordinary Relief Would Upset the Status Quo

FieldTurf and AstroTurf are competitors as to the sale and installation of artificial grass fields for sporting events and other activities. FieldTurf's Motion is calculated to upset that competitive balance and give FieldTurf an advantage which it does not deserve. The relief requested would also upset the business operations of AstroTurf unnecessarily and unfairly - and be a detriment to many people and communities.

Provisional relief as requested by FieldTurf is typically requested to preserve the subject matter pending a hearing on the merits (i.e. preserve the status quo). That rationale is not applicable here. Prohibiting AstroTurf from fulfilling its contracts and installing new fields will only hurt AstroTurf and the cities, communities, school districts and players who want and need the field. There are no positive aspects to restraining or enjoining AstroTurf – it will only help FieldTurf succeed on its anti-competitive activities.

This is a normal case for patent infringement. Monetary damages to FieldTurf would be sufficient under the law as a full measure of recovery. Any temporary restraining orders or preliminary injunction orders are not warranted.

## Conclusion

Requests for restraining orders and preliminary relief are matters of equity, and require that each of four factors to be met. Here, none of the four factors are met and Field Turf has not acted equitably. In addition, injunctive relief is only granted where monetary damages are

insufficient. Thus, FieldTurf's Motions for a Temporary Restraining Order and a Preliminary Injunction should be denied.

If the Court does not immediately deny FieldTurf's Motions, AstroTurf respectfully requests the opportunity to supplement the current Opposition Brief and obtain discovery as set forth in AstroTurf's Emergency Motion.

Respectfully submitted,

By: \s\ John A. Artz
John S. Artz (P-48578)
John A. Artz (P-24679)
**DICKINSON WRIGHT, PLLC**
38525 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304-5092
Tel.   (248) 433-7200
Fax.   (248) 433-7274
jsartz@dickinsonwright.com
jaartz@dickinsonwright.com

*Attorneys for Defendant*

Dated:   July 1, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2010, I filed the foregoing DEFENDANT ASTROTURF'S RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION with the Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/Christy Williams
Christy Williams

BLOOMFIELD 36239-55 1063327