UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIELDTURF USA, INC., a Florida
corporation, FIELDTURF TARKETT, INC.,
a Canadian corporation,

Case No. 2:10-cv-12492

HONORABLE STEPHEN J. MURPHY, III

    Plaintiffs,

v.

ASTROTURF, LLC, a Michigan limited
liability company,

    Defendant.
                                                   /

**ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND
DENYING AS MOOT DEFENDANT'S EMERGENCY MOTION TO
EXTEND THE DATE FOR HEARING ON MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Plaintiff FieldTurf USA, Inc. and FieldTurf Tarkett, Inc. (collectively "FieldTurf") moves for a temporary restraining order and preliminary injunction to prohibit defendant Astroturf, LLC ("Astroturf") from offering to sell, selling and making a synthetic grass field that FieldTurf alleges infringes the claims of U.S. Pat. No. 6,723,412 (the '412 patent"). FieldTurf specifically seeks a temporary restraining order and preliminary injunction forbidding AstroTurf from installing synthetic grass fields for Oregon State University, Extra Bases LLC and the Citrus Bowl. FieldTurf also seeks an order forbidding AstroTurf from altering any field that it has installed since 2004. The Court held a hearing on plaintiffs' motion on Friday, July 2, 2010. For the reasons stated below, FieldTurf's motion will be denied in its entirety.[1]

---

[1] AstroTurf has filed an emergency motion to Extend the Date for Hearing on FieldTurf's Motion for a Temporary Restraining Order and for additional time for briefing. As the Court has already held the hearing and finds that the briefing to date is sufficient to deny FieldTurf's motion, the Court will deny as moot AstroTurf's cross-motion.

**INTRODUCTION AND BACKGROUND**

FieldTurf is the owner by assignment of all right, title and interest in the '412 patent, entitled "Synthetic Turf" issued on April 20, 2004.

Shortly after its issuance, the '412 patent was reexamined by the U.S. Patent and Trademark Office at the request of a third party. The U.S. Patent and Trademark Office confirmed the patent. See Reexamination Certificate No. 6,723,412 C1. The '412 patent is also currently involved in a reissue proceeding. In the reissue proceeding, the U.S. Patent and Trademark Office initially rejected the issued claims of the '412 patent. Plaintiff asserts in its papers that the rejection of the claims of the '412 patent was withdrawn on June 30, 2010, although there is no evidence of this in the record.

FieldTurf filed the present action for patent infringement on June 23, 2010. FieldTurf's complaint asserts that AstroTurf has directly infringed the '412 patent by offering to sell, selling and making infringing artificial turf products for Dearborn High School and Star International Academy, and has infringed the '412 patent by offering to sell infringing products to Oregon State University and Extra Bases, LLC. The complaint contains no factual allegations or claims for relief regarding the Citrus Bowl. FieldTurf served defendant with the complaint on June 29, 2010, by service on AstroTurf's registered agent in Oregon.

FieldTurf filed the present motion for a temporary restraining order on June 30, 2010 and served the defendant with the motion at the close of business on June 30, 2010. Unlike the complaint, the motion for a temporary restraining order and preliminary injunction focuses almost exclusively on sales or potential sales to Oregon State University and the Citrus Bowl, which FieldTurf asserts on information and belief are scheduled to commence installation on or about July 6, 2010.

The technology at issue here is synthetic grass surfaces, also known as "artificial turf" or "synthetic turf." FieldTurf's '412 patent claim at issue here, claim 12, is limited to artificial grass fields in which the "fill" or "infill" (i.e. the particulate matter) is 2/3 the height of the grass "ribbons" and the length of the ribbons is twice the distance between rows of ribbons. FieldTurf's factual support for its motion is an offer made by AstroTurf to Oregon State University on April 24, 2010, which offer FieldTurf asserts infringes at least claim 12 of the '412 patent. FieldTurf extrapolates from the Oregon State offer to argue that all of AstroTurf's "GameDay" products infringe on Claim 12 of the '412 patent, and therefore all AstroTurf GameDay fields should be enjoined. In its claim for relief, FieldTurf seeks a temporary restraining order and preliminary injunction prohibiting AstroTurf from installing any synthetic turf product for Oregon State University, Extra Bases LLC and the Citrus Bowl.

AstroTurf argues in response that the Oregon State University offer contained erroneous specifications and as a matter of fact AstroTurf has not and will not install a synthetic turf field in which the infill is 2/3 the height of the grass ribbons. AstroTurf argues, therefore, it has not and will not infringe on the '412 patent. AstroTurf also submits evidence showing that the other requirements for preliminary injunctive relief are not met and therefore FieldTurf's motion for a temporary restraining order and preliminary injunction should be denied.

## ANALYSIS

Section 283 of the Patent Act provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by the patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Federal Circuit law governs the legal standard applicable to the question of whether a court should issue

a preliminary injunction in a patent case. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 n.3 (Fed. Cir. 1998). In order to issue a preliminary injunction, the Court must evaluate and balance: (1) the likelihood of success on the merits, (2) whether the applicant will suffer irreparable harm should an injunction not issue, (3) the balance of harm between the parties, and (4) the public interest. *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002). The Court must consider all four factors before granting a preliminary injunction, while the Court may deny a preliminary injunction if the moving party fails to make a showing on any one of the four factors, particularly the first two. *Id*

No preliminary injunction may issue "except upon the giving of security by the applicant, in such sums as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

A. <u>Claim Construction</u>

There appears to be no dispute between the parties on the issue of claim construction, at least for purposes of the present motion. FieldTurf asserts that a preliminary injunction should issue because AstroTurf is infringing at least claim 12 of the '412 patent. Claim 12 contains the following limits: (1) a synthetic grass surface, comprising (2) a flexible backing member, (3) parallel rows of synthetic ribbons, representing blades of grass, projecting upwardly from the backing member, the rows of ribbons spaced apart from each other, (4) the surface including a relatively thick layer of particulate material on the backing member supporting the ribbons in a relatively upright position relative to the backing member, (5) wherein the relationship of the length of the ribbons and the spacing between the rows is $2A \leq L$ such that the length of the ribbons is at least twice the spacing between rows, and

4

(6) the particulate material having a thickness T of substantially 2/3 the length of the ribbons, (7) when A is the spacing between the rows, L is the length of the ribbon measured from the flexible backing, and T is the thickness of the layer of particulate material. FieldTurf asserts that the plain and ordinary meaning of the patent claim is that the particulate material has a thickness of about 2/3 the length of the ribbon. FieldTurf asserts that AstroTurf is infringing the '412 patent by offering to sell products that include an infill depth of exactly 2/3.

The sole evidentiary support for FieldTurf's motion is a proposal submitted by AstroTurf to Oregon State University on April 24, 2010. This proposal is for two AstroTurf products called "GameDay Grass MT 41" and "GameDay Grass XPe 42, both of which products are asserted to infringe on the '412 patent in the same way and both of which will hereafter be referred to as "GameDay." FieldTurf asserts that, as evidenced by the Oregon State bid, the GameDay synthetic grass offered by AstroTurf infringes claim 12 of the '412 patent, in that the specifications of that bid quote a product in which the particulate matter or fill is 2/3 the length of the ribbons and the rows of ribbons are spaced such that the length of the ribbons is at least twice the spacing between the rows. FieldTurf then extrapolates from the Oregon State bid to assert that all GameDay fields infringe on the '412 patent in the same regards.

The Oregon State bid does appear on its face to infringe on claim 12 of the '412 patent. Included in the April 24, 2010 Oregon State proposal are technical data sheets in which synthetic turf field offered has a pile height of 2.25 inches and infill total depth of 1.5 inches, which adds up to a ratio of 2/3 infill height to total ribbon length. FieldTurf asserts that this proposal shows that AstroTurf's GameDay product is infringing on claim 12 of the '412 patent, which claims a synthetic turf with a ratio of 2/3 infill height to total ribbon length.

5

FieldTurf also asserts that the Oregon State bid is an "offer to sell" an infringing product in violation of 35 U.S.C. § 271(a).

For purposes of the present motion, AstroTurf does not dispute that a synthetic turf with a ratio of 2/3 infill height to total ribbon length would be covered by the claims of the '412 patent. AstroTurf's position on this motion is that as a matter of fact it does not manufacture, sell or offer to sell any synthetic turf with a ratio of 2/3 infill height to total ribbon length, and therefore FieldTurf cannot demonstrate a likelihood of success on the merits of its infringement claim. AstroTurf further asserts that preliminary injunctive relief is not appropriate here because FieldTurf cannot demonstrate that the equitable factors necessary for the Court to grant injunctive relief.

B. Likelihood of Success on the Merits

To satisfy the first equitable factor, and as a threshold for preliminary injunctive relief, FieldTurf must demonstrate a likelihood of success on the merits. In a patent case, this means that FieldTurf must prove that "'in light of the presumptions and burdens that will inhere at trial on the merits,' [it] will likely prove that [AstroTurf's] product infringes the ['412] patent and that it will withstand [AstroTurf's] challenges to the validity and enforceability of the ['412] patent." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 229 F.3d 1343, 1350 (Fed. Cir. 2001)). The Court has reviewed the evidence submitted in support of and in opposition to FieldTurf's motion and finds that FieldTurf has failed to establish a likelihood of success on the merits because it has failed to meet its burden of showing that AstroTurf's product infringes on the '412 patent. The Court will therefore not address AstroTurf's other possible defenses, including AstroTurf's invalidity defense.

As discussed above, FieldTurf's motion relies upon the April 24, 2010 bid to Oregon State University that, if accepted and when installed, will have a "fill" of 2/3 the height of the grass ribbons. AstroTurf contends, however, that it has not and will not sell a synthetic grass field with such a characteristic, despite the Oregon State bid which appears to show otherwise. In support of its assertion that it has not and will not produce a synthetic grass field that arguably infringes on the '412 patent, Astroturf has submitted the declaration of Jim Petrucelli, Vice President of Business Development at AstroTurf. Petrucelli declares that the GameDay Grass fields that AstroTurf quotes to install and installs have a 3/8" spacing between the rows of ribbons, a turf fiber height of 2.25" and an infill height of 57% or less than the height of the fibers. Petrucelli Decl. ¶ 5. Petrucelli goes on to aver that he has reviewed at least fifty percent of purchase orders for GameDay fields and confirms that the weight of infill installed for all GameDay fields reviewed yields an infill height in all instances less than 57%. *Id.* ¶ 7. Based upon the Petrucelli declaration, AstroTurf argues that none of its GameDay fields infringe the 2/3 fill limitation of the '412 patent and therefore FieldTurf cannot succeed on its claim of patent infringement.

At the July 2, 2010 hearing, counsel for AstroTurf addressed the Oregon State bid and the fact that it appears from the face of the bid that the infill height of the fields offered in that bid yielded a 2/3 proportion of infill height to the height of the grass ribbons. Counsel for AstroTurf represented at the hearing that the portion of AstroTurf's bid to Oregon State University that stated that the "fill" would come to 2/3 the height of the grass ribbons was an error made by a new employee, and that, contrary to the bid figures, AstroTurf has not installed any synthetic grass fields with a 2/3 infill height and has no plans to install synthetic grass fields, including at Oregon State University, with an infill height of 2/3 the height of the fibers, consistent with the Petrucelli declaration. AstroTurf's counsel further

7

represented that due to the extremely short time frame in which it had to prepare for the hearing on FieldTurf's motion for a temporary restraining order, just 36 hours from receiving notice of the motion until the hearing, AstroTurf was unable to procure an affidavit on this point.[2]  FieldTurf did not argue at the July 2 hearing that AstroTurf's representation was

---

[2] The Court notes that there appears to be some merit to AstroTurf's argument that FieldTurf may have "manufactured" an emergency to seek a temporary restraining order. FieldTurf sought a temporary restraining order in this matter in part by asserting "on information and belief" that "construction associated with one of the alleging infringing fields, at the Citrus Bowl, is scheduled to commence on or about July 6, 2010," and suggested that this emergency authorized a temporary restraining order, which is only permitted in circumstances where irreparable harm will occur before the opposing party can be heard in opposition.  See Fed. R. Civ. P. 65(b).  This representation caused the Court to schedule an immediate hearing on FieldTurf's motion, immediately prior to the holiday weekend.  The aura of emergency created by FieldTurf's initial filings, however, has been shown to be unsupported by facts and is also called into question by FieldTurf's actions in this litigation.

AstroTurf has submitted an email, apparently authored by a FieldTurf sales representative, dated June 23, 3010, in which the employee forwards a copy of the complaint in this action to the City of Orlando (a customer of AstroTurf for the potential Citrus Bowl contract), and asserts that FieldTurf intends to file a motion for a temporary restraining order on or about Friday, June 25, and asserts that the filing "will be followed by an injunction against AstroTurf for the Citrus Bowl contract." See AstroTurf's Response and Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Docket no. 10, Exhibit 1. FieldTurf did not serve the complaint on the *defendant*, however, until June 29, 2010, a full week after it provided the complaint to the City of Orlando and just a day before FieldTurf filed its present motion for temporary restraints. See AstroTurf's Response, Docket 10, Exhibit 3 (Philpott Decl. ¶ 3).  The complaint itself is devoid of allegations regarding the Citrus Bowl, although the motion for temporary restraining order specifically seeks an injunction of the Citrus Bowl project.

The urgency underlying the application for a temporary restraining order is further undercut by the facts in the record.  AstroTurf points out that the Oregon State proposal is dated April 24, 2010, and FieldTurf does not state when it became aware of the proposal, or sufficiently justifies why it waited for more than two months from the date of the proposal to seek a temporary restraining order and did not serve opposing counsel with its motion papers until after the close of business on June 30, 2010.  It also appears that there is no factual basis for FieldTurf's representation "on information and belief" that the fields at the Citrus Bowl and at Oregon State are going to be installed beginning July 6, 2010.  AstroTurf represented during the hearing, and FieldTurf conceded, that the Oregon State University project is not scheduled to begin installation for another six weeks.  AstroTurf also represents, and FieldTurf does not dispute, that the contract for the Citrus Bowl is not even signed yet, and certainly not scheduled to begin on July 6, 2010.

The Court is impelled to the conclusion that in all likelihood the simple fact is that FieldTurf lost the bid for the Citrus Bowl installation to its competitor, AstroTurf, and that the

incorrect, but merely asserted that if such were the case it would be amenable to a more limited temporary restraining order.

The Court finds that, based on the facts in the record recited above, FieldTurf has failed to meet its burden of showing that AstroTurf's GameDay product actually infringes upon Claim 12 of the '412 patent. The only evidence of infringement offered by FieldTurf, the Oregon State bid, has been rebutted by the Petrucelli declaration to the contrary and by the representations of counsel for AstroTurf at the July 2, 2010 hearing.

FieldTurf argues that even if it has no evidence of an actual infringing product, the offer to Oregon State constituted an infringing "offer to sell" under 35 U.S.C. § 271(a). This argument is without merit. The evidence before the Court in the form of the Petrucelli declaration shows that AstroTurf intended to sell its non-infringing product, and did not intend to offer to sell a synthetic grass field with a 2/3 infill height. *See FieldTurf Intern. Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1370 (Fed. Cir. 2006) (bid that appears to be an offer to sell an infringing product does not violate 35 U.S.C. §271(a) where there is no intent to actually sell infringing product). The erroneous Oregon State contract therefore did not constitute an offer to sell an infringing product.

The Court finds that FieldTurf has not met its burden of showing a likelihood of success on the merits. Astroturf has submitted admissible evidence in the form of the Petrucelli declaration that no AstroTurf field has or will infringe on the 2/3 "fill" claim in the '412 patent, because no AstroTurf field has a infill height of more than 57% of the total height of the fibers. FieldTurf's only evidence to the contrary is the Oregon State bid

---

contract for that installation was in the process of being finalized. FieldTurf apparently surmised that a temporary restraining order issued against AstroTurf would disrupt the contract, and perhaps permit it to be awarded to FieldTurf. The Court hopes that such a cynical version of the facts will not be born out in this litigation, but it seems apparent this is what happened based upon the present record.

document, which contradicts the admissible evidence of the Petrucelli declaration and which AstroTurf's counsel represents is erroneous.

C. Irreparable Harm to Plaintiff If Injunction Does Not Issue

As the Court finds that FieldTurf has failed to carry its burden of showing a likelihood of success on the merits, the Court is not required to address the other equitable factors to deny FieldTurf's motion for a temporary restraining order or preliminary injunction. *Jack Guttman, Inc.*, 302 F.3d at 1356. The Court will, however, briefly address the remaining factors because application of those factors bolsters the Court's conclusion that the plaintiff is not entitled to preliminary injunctive relief.

FieldTurf asserts that irreparable harm is presumed in patent cases where the patent holder has established a likelihood of success on the merits. As discussed above, the Court finds that FieldTurf has not established a likelihood of success on the merits, so no presumption would apply. Even if FieldTurf established a likelihood of success on the merits, however, the weight of recent authority is that the presumption of irreparable harm no longer applies in light of the United States Supreme Court decision in *eBay Inc. v. Merc Exchange, LLC*, 547 U.S. 388, 392-94 (2006), a decision that means a presumption of irreparable harm no longer applies in the context of a permanent injunction. The Federal Circuit has held (in an unpublished opinion) that the 2006 pre *eBay* presumption of irreparable harm no longer applies in the case of preliminary injunctive relief. *Automated Merch. Sys. v. Crane Co.*, 357 Fed. Appx. 297, 301 (Fed. Cir. 2009). Most district courts that have addressed the issue have likewise found that the presumption of irreparable harm does not apply in preliminary injunction proceedings in light of the *eBay* decision. *See, e.g., Acoustic Processing Tech., Inc. v. KDH Electronic Systems, Inc.*, ___ F. Supp.2d ___, 2010 WL 1131196 at * 9 (D. Me. March 19, 2010); *Mike's Train House, Inc. v. Broadway Ltd.*

*Imports, LLC*, ___Fed. Supp. ___, 2010 WL 1731677 at * 3, n.5 (D. Md. April 29, 2010); *Voile Mfg. Corp. v. Dandurand*, 551 F. Supp.2d 1301, 1306 (D. Utah 2008) (citing cases); *Tiber Labs., LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373, 1380 (N.D. Ga. 2007) (same); *but see Christiana Indus. v. Empire Electronics, Inc.*, 443 F. Supp.2d 870, 884 (E.D. Mich. 2006) (Roberts, J.). This Court has reviewed the case law cited above and agrees with those courts that have held the Supreme Court's opinion in *eBay* as precluding application of a presumption of irreparable harm in considering a motion for preliminary injunctive relief just as it does in the case of a permanent injunction. Thus, even if FieldTurf succeeds in establishing a likelihood of success on the merits, it would still need to offer evidence showing irreparable harm would result if an injunction were not to issue.

FieldTurf's motion for a preliminary injunction fails to offer any evidence of irreparable harm aside from its argument that irreparable harm is presumed and aside from the type of irreparable harm that is present in every case, such as the possibility of price erosion and the intangible injury to the patent-holder's right to exclude.[3] FieldTurf has offered no admissible evidence of economic harm, and indeed no affidavits of any sort in support of its motion for a temporary restraining order. Field Turf has therefore failed to carry its burden on the second prong of the analysis.[4]

---

[3] Proof of lost market share and lost sales alone are insufficient to establish irreparable harm, as are allegations of price erosion without proof. *Automated Merch. Systems, Inc.*, 357 Fed. Appx. at 301.

[4] At the July 2, 2010 hearing on its motion, FieldTurf referred to an affidavit by its Vice-President of Sales for FieldTurf USA, which FieldTurf asserted offers factual support for FieldTurf's claim of irreparable harm. The Court directed FieldTurf that the affidavit needed to be served on the opposing party and filed electronically pursuant to this Court's local rules in order to be considered by the Court. As of the date of this order, FieldTurf has not filed any factual affidavit in support of its claim of irreparable harm.

D. <u>Balance of Harms</u>

AstroTurf asserts that the balance of hardships clearly favors the defendants here. AstroTurf submits evidence showing that it has numerous contracts with cities, communities, and school districts that require artificial grass fields to be installed and ready for play this season. AstroTurf also asserts that the contracts have liquidated damages provisions that would cause substantial financial harm to AstroTurf.

In support of these contentions, AstroTurf submits the declaration of Joi Philpott, AstroTurf's General Counsel. See AstroTurf's Response and Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Exhibit C (Dkt. 10). Philpott states that AstroTurf is in the process of installing some synthetic turf fields, none of which are the subject of FieldTurf's complaint or motion for a temporary restraining order, but which have liquidated damages or penalty clauses that require AstroTurf to compensate the customer if a field is not timely installed. Philpott Decl. ¶ 6-7. Philpott states that an injunction would cause AstroTurf's crews to pursue other jobs, and there would be no guarantee that they would be available to resume work once the injunction lifted, which would cause further delays and harm to AstroTurf. *Id.*, ¶ 7. AstroTurf would also lose potential sales on projects that it expects to quote on or will be asked to quote on in the immediate future. *Id.*, ¶ 8. Philpott also states that an injunction would cause incalculable damage to AstroTurf's good will and reputation as a result of its inability to meet its contractual obligations. *Id.* Finally, Philpott asserts that AstroTurf is in the process of installing fields on behalf of municipalities for school districts around the country, where the existing fields have already been torn up and removed. *Id.* ¶ 9. An injunction would cause damage to these schools, municipalities and schools in that it may prevent the teams from having fields to play on in the fall. *Id.*

The Court finds that based on the evidence in the record, plaintiff's weak evidence of infringement, and the evidence of irreparable harm to the defendant, the balance of equities does not favor injunctive relief in this case.

E. Public Interest

AstroTurf argues that the public interest would not be served by preliminary injunction because the need of the players, fans, schools, communities and cities favor allowing Astroturf to continue to fulfil its contracts. In support of this argument, AstroTurf relies upon the Philpott declaration discussed above.

FieldTurf's argues that the public interest would be served because its injunction does not seek the destruction of any existing fields and no public policy is served by allowing AstroTurf to continue to infringe FieldTurf's intellectual property rights. FieldTurf cites *Abbott Labs v. Andrux Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) for the proposition that "[a]bsent any other relevant concerns, the Federal Circuit found that the public is best served by enforcing patents that are likely valid and infringed." FieldTurf fails to note, however, that the Federal Circuit went on to state in *Abbott Labs* that where the patentee does *not* establish a likelihood of success on the merits, "the public interest is best served by denying the preliminary injunction." *Id.* Here, as in *Abbott Labs*, the patentee has not established a likelihood of success on the merit and therefore the public interest would best be served by denying the preliminary injunction.

**CONCLUSION**

The Court has reviewed the evidence in the record and finds that FieldTurf has not met its burden of showing a likelihood of success on the merits because FieldTurf has not offered sufficient evidence showing that any AstroTurf product actually infringes on the '412 patent. The Court also finds that the evidence in the record shows that FieldTurf has not

demonstrate that irreparable harm will result if injunctive relief issues, and further finds that the evidence in the record shows that AstroTurf will suffer irreparable harm if an injunction is wrongly issued. Finally, the Court finds that the public interest will not be served by the issuance of an injunction.

**WHEREFORE, IT IS HEREBY ORDERED** that FieldTurf's motion for a temporary restraining order and a preliminary injunction (docket no. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that AstroTurf's Emergency Motion to Extend the Date for Hearing on FieldTurf's Motion for a Temporary Restraining Order and Preliminary Injunction (docket no. 11) is **DENIED AS MOOT**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 6, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 6, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager