UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIELDTURF USA, INC., a Florida
corporation; FIELDTURF TARKETT, INC.,
a Canadian corporation,

Case No. 10-12492

HONORABLE STEPHEN J. MURPHY, III

        Plaintiffs,

v.

ASTROTURF, LLC, a Michigan limited
liability company,

        Defendant.
                                   /

**ORDER CANCELLING HEARING FOR 9/14/10 AT 2 PM AND
DENYING MOTION FOR ORDER TO SHOW CAUSE
WHY PLAINTIFF SHOULD NOT BE HELD IN CONTEMPT
OF COURT FOR IMPROPER CUSTOMER CONTACTS
<u>REGARDING THIS LITIGATION</u> (docket no. 21)**

In this motion, AstroTurf asks the Court to issue an order requiring plaintiffs FieldTurf USA, Inc. and FieldTurf Tarkett, Inc. ("FieldTurf") to show cause why they should not be sanctioned for contacting certain customers regarding this litigation. They additionally request an order preventing future contact with customers by FieldTurf on the topic of this litigation, or about the validity of the patent for synthetic grass athletic field surfaces held by FieldTurf that is at the center of this dispute. Originally, the Court scheduled a hearing on this motion for September 14, 2010. After consideration of the parties' submissions, the Court no longer believes that oral argument will be helpful or clarify the issues in this case, and it will decide the motion on the papers. *See* E.D. Mich. LR 7.1(f)(2).

The Court will deny AstroTurf's motion because it fails to show that FieldTurf violated a definite order of this Court. In addition, the Court will clarify what sorts of conduct by the parties with customers are permissible in this litigation.[1]

**FACTS**

On June 23, 2010, FieldTurf filed a lawsuit against Astroturf in this Court, alleging infringement of Patent No. 6,723,412 ("the '412 patent"), which claims a "Synthetic Turf." Docket No. 1. A week later, on June 30, 2010, FieldTurf made a motion to impose both a temporary restraining order and a preliminary injunction against AstroTurf. Docket No. 6. FieldTurf alleged that AstroTurf was to begin installation of an allegedly infringing field at the Florida Citrus Bowl in Orlando, Florida on July 6, 2010. The Court held a hearing on the motion on July 2, 2010. Docket, Minute Entry 07/02. On July 6, it issued an order denying the motion. Docket No. 16. The motion currently before the Court addresses whether FieldTurf had a duty to obey a statement made by the Court in the motion hearing.

The statement concerned an e-mail sent by FieldTurf salesman Bill Squires to the City of Orlando, which operates the Citrus Bowl, on June 23, 2010. In that e-mail, FieldTurf attached a copy of the complaint they filed in this Court, and described their plans to file motions for a preliminary injunction and a temporary restraining order which would prevent AstroTurf from performing on the Citrus Bowl contract. Def. Resp. Mot. TRO Ex. C, Ex. 1. FieldTurf did not serve the complaint on AstroTurf until June 29, 2010. *Id.* Ex. C, ¶ 3. During the July 2 hearing, the Court made a remark specifically addressing Squires' e-mail:

I do want to say, and this is important, and I'm not going to take any action, but Mr. Squires, I'm sure, is not an attorney. But Mr. Squires told the City of Orlando on Wednesday, June 23, which was [six] days before the materials in this case were [served

---

[1] In addition, the Court will deny FieldTurf's Motion for Extension of Time to File Response/Reply as moot (docket no. 26) and grant their Motion for Leave to File *Instanter* Its Opposition to Motion (docket no. 30).

2

on defendants], that FieldTurf will file a temporary restraining order, which will, quote, be followed by an injunction against AstroTurf for the Citrus Bowl contract. That's not only incorrect, it's dangerous and I think improper for Mr. Squires to be saying to a party that's not involved in this particular litigation. *So I would admonish counsel to control their clients and try to avoid these types of things in the future.*

Tr. TRO Mot. Hr'g 41–42 (emphasis added). In the Court's order denying FieldTurf's motion, the Court commented on this e-mail and other behavior by FieldTurf in the early stages of litigation, and expressed concerns about FieldTurf's apparent use of litigation as a way of interfering with AstroTurf's legitimate relationships with customers. Order, Docket No. 16, at 9 n.2.

On July 2, 2010, at 3:01 PM — just a few hours after the hearing took place — Martin Olinger, a senior vice-president of sales with FieldTurf, who had attended the hearing, wrote an e-mail to the City of Orlando officials responsible for the Citrus Bowl field. The most important statements in this e-mail relate to Olinger's description of an affidavit given by Jim Petrucelli, the vice president of business development at AstroTurf. In that affidavit, Petrucelli claimed that the proposed field at the Citrus Bowl would have a sand infill height that covered less than 57% of the height of the fibers, a crucial number as it relates to the '412 patent in dispute in this case. Pl. Resp. Mot. TRO, Ex. A, ¶ 9. Olinger's e-mail claims that Petrucelli's statement is "obviously in contradiction to what AstroTurf proposed for the Citrus Bowl installation . . . ." Def. Mot. to Show Cause, Ex. 2. While not explicitly threatening the City, Olinger wrote that he was "sending this to you since you will undoubtedly have the best understanding of the implications here for this installation." *Id.* AstroTurf caught wind of the communication and responded to quell any concerns by City of Orlando officials. Def. Mot. to Show Cause, Ex. 3.

On July 14, 2010, after FieldTurf's motions were rejected in this Court, FieldTurf's general counsel, Marie France-Nantel, sent another e-mail to Eric Shutes, a parks

3

coordinator in Naperville, Illinois. The e-mail addressed a proposal for a field installation by AstroTurf at a sports complex operated by the city. In the e-mail, France-Nantel reiterated FieldTurf's "strong belief that the product offered by Astroturf infringes the '412 patent and that any product it attempts to sell you would likewise infringe — putting you in a potentially compromising position." Def. Mot. to Show Cause, Ex. 4. Again, AstroTurf found out about the communication and responded. Def. Mot. to Show Cause, Ex. 5.

AstroTurf claims that both of these e-mails constitute sanctionable behavior, as they directly contravene the Court's statement to "avoid" communications like the June 23 e-mail sent by Squires. The parties extensively argued the truth or falsity of these statements in their briefs, but the Court does not reach these issues because it holds that there is no basis for claiming FieldTurf is in contempt of an order of the Court.

### ANALYSIS: MAY FIELDTURF BE SANCTIONED UNDER CIVIL CONTEMPT RULES?

Civil contempt proceedings allow a court "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). The party seeking contempt sanctions must show "by clear and convincing evidence . . . that '[the adverse party] violated a *definite and specific order* of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (emphasis added) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). This is "not a light burden," requiring much more assured proof than under the typical "preponderance of the evidence" standard. *Id.* This motion hinges on whether the Court's statement in the July 2 hearing — "I would admonish counsel to control their clients and try to avoid these types of things in the future" — constitutes an "order" which

4

could be the basis for civil contempt sanctions.  While the Court shares AstroTurf's frustration with FieldTurf's conduct during the course of litigation, it finds that AstroTurf cannot show by clear and convincing evidence that the Court's "admonishment" was an "order" FieldTurf had to follow under pain of contempt.

As the language of the civil contempt test suggests, courts are hesitant to expand the meaning of the term "order" with the purpose of holding litigants in contempt.  *See Grace v. Ctr. for Auto Safety*, 72 F.3d 1236 (6th Cir. 1996) ("[A]mbiguities must be resolved in favor of persons charged with contempt.").  The Sixth Circuit rejects attempts to impose contempt sanctions when judges merely "request" or "urge" parties from the bench to take some course of action.  *Glover v. Johnson*, 138 F.3d 229, 245 (6th Cir. 1998) (overturning the district court's imposition of sanctions where judge "strongly urg[ed]" prison officials to make added efforts to advertise apprenticeship programs); *In re LaMarre*, 494 F.2d 753 (6th Cir. 1974) (reversing, in a criminal contempt case under 18 U.S.C. § 104, a judge's imposition of sanctions where he "requested]" a party to appear at a pre-trial conference).[2] Moreover, AstroTurf cites no case in which a federal district court imposed contempt sanctions under circumstances similar to this case.   Given AstroTurf's obligation to demonstrate FieldTurf is in contempt of a clear order of this Court by clear and convincing evidence, the Court sees no need to stray from the rule of *Glover* and *LaMarre*.

---

[2] The word "admonish" is more forceful than either "urge" or "request," but it is not an unambiguous synonym for "order."  An "order" imposes duties, while an "admonishment," at most, urges someone to follow through on already-known duties. *Compare* Webster's Third New International Dictionary 28 (1961) (defining "admonish" as meaning, at one extreme, "to indicate duties," and at the other, "to give advice or encouragement"), *with id.* at 1588 (defining "order," in relevant part,  as "to require or direct (something) to be done"). To borrow an analogy from statutory interpretation, if the Court wanted to make an order, it would say so.  *Cf. James v. United States*, 550 U.S. 192, 230 (2007) ("If Congress wanted the first [option] . . . it could very easily have crafted a statute which said that.").

5

Even if the "admonishment" had been phrased as an "order," there admittedly remains some uncertainty about what behavior the Court criticized in this case. FieldTurf correctly points out that as the holder of a presumptively valid patent, it has a right to inform parties of the risks they run when they contract with a party offering a potentially infringing product.[3] *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer . . . ."); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709–10 (Fed. Cir. 1992) (reaffirming that a patent holder has the right to notify potential infringers of the consequences of infringement, so long as the notice is not indiscriminate, and the holder believes the patent is valid). The Nantel e-mail from July 14 is an example of this sort of permissible communication. By contrast, comments that, explicitly or implicitly, predict the results of motions, like the Squires e-mail from June 23; or comment on the credibility of evidence presented in this litigation, like the Olinger e-mail from July 2, are of a different character. The Court will therefore enter an order prohibiting commentary on the litigation to potential customers in an attempt to dissuade them from purchasing product, but permitting good-faith warnings about the risks customers run by contracting with a party that may be infringing a patent.

**WHEREFORE**, it is hereby **ORDERED** that AstroTurf's motion for an order to show cause (docket no. 21) is **DENIED**. In addition, FieldTurf's Motion for Extension of Time to File Response/Reply (docket no. 26) is **DENIED** as moot, its Motion for Leave to File

---

[3] There is little question that stadium operators who have an infringing turf field installed would also be infringing the patent. 35 U.S.C. § 271 ("[W]hoever without authority . . . *uses* . . . any patented invention, within the United States . . . infringes the patent.") (emphasis added). The parties do not dispute this point.

*Instanter* Its Opposition to Defendant's Motion (docket no. 30) is **GRANTED**, and the hearing set for September 14, 2010 at 2:00 PM in front of this Court is **CANCELLED**.

**FURTHERMORE**, it is hereby **ORDERED** that the parties to this litigation are not to make comments to customers on the submissions and events in this litigation with the intent of deterring sales the Court has not enjoined. In making this Order, the Court in no way circumscribes the rights of the parties to inform customers, in good faith, about the risk of purchasing and using products that may infringe a patent.

**SO ORDERED**.

    s/Stephen J. Murphy, III
    STEPHEN J. MURPHY, III
    United States District Judge

Dated: September 13, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 13, 2010, by electronic and/or ordinary mail.

    Alissa Greer
    Case Manager