# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation; FIELDTURF TARKETT, INC., a Canadian corporation,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>ASTROTURF, LLC, a Michigan limited liability company,<br><br>　　　　　Defendant. | Civil Action No. 2:10-cv-12492-SJM-MJH<br><br>Hon. Stephen J. Murphy, III<br><br>Magistrate Judge Michael J. Hluchaniuk |

## REPORT AND RECOMMENDATION OF DISCOVERY MASTER RE DISPOSITION OF DISCOVERY MOTIONS

These five discovery motions were referred by the Court to the Special Master for a report and recommendation regarding their disposition. A hearing on the motions was conducted on March 20, 2015. Having considered the points and authorities advanced in the briefing, and the arguments of counsel, the Special Master makes the following report and recommendation.

**Background**

In June 2010, Plaintiffs FieldTurf Tarkett, Inc. and FieldTurf USA, Inc. (collectively "FieldTurf") filed their complaint alleging that Defendant AstroTurf, LLC ("AstroTurf") has infringed one of its patents, U.S. Patent No. 6,723,412 ("the '412 patent"). AstroTurf counterclaimed, seeking declarations of non-infringement and of patent invalidity and unenforceability, and asserted its own false advertising claims against FieldTurf.

The parties engaged in extensive fact discovery. Fact discovery closed on May 3, 2013, except for two discrete issues. (D.I. 213.) First, the parties agreed in November 2012 to

postpone financially sensitive fact discovery that was relevant to possible damages claims until the Court ruled on summary judgment. Second, just after the close of fact discovery FieldTurf filed its Third Motion to Compel the production of infringement-related discovery and it was at least possible that additional discovery would ensue if the Court granted that motion. (D.I. 219.)

The parties also briefed cross motions for summary judgment. The summary judgment phase of the case ended on September 29, 2014 with the Court's denial of AstroTurf's motion for reconsideration. (D.I. 250.) The Court also granted-in-part FieldTurf's Third Motion to Compel on September 16, ordering AstroTurf to produce certain documents, which it did in December 2014. (D.I. 248.)

In January 2015, the Court entered an order appointing the Special Master to resolve various discovery disputes outstanding in late 2014 and early 2015. (D.I. 266.) In particular, the Court tasked the Special Master with resolving several discovery motions that had been filed, along with other discovery disputes that would arise. Among the disputes to be addressed by the Discovery Master were issues raised in the following:

1. FieldTurf's motion for a protective order requesting that the Court order that FieldTurf not be required to answer 1,303 requests to admit propounded by AstroTurf;

2. AstroTurf's motion to compel "source documents" related to a spreadsheet FieldTurf produced in 2011;

3. AstroTurf's motion for sanctions relating to alleged withholding of certain documents;

4. FieldTurf and John Rodgers' motion seeking to quash AstroTurf's subpoena;

5. FieldTurf's request to compel testimony regarding AstroTurf's attempts to design around the '412 patent.

The Special Master held a hearing on these issues from 9:00 am to 1:30 pm on March 20, 2015.

**Prior Orders**

In considering the pending motions, the Discovery Master has the benefit of a number of rulings the Court already made in this case, which provide guidance regarding certain issues, including the Court's June 13, 2013 scheduling order and the protective order issued on January 3, 2012.

**Analysis**

1) **FieldTurf's Motion for a Protective Order**

AstroTurf submitted 1303 requests for admission to FieldTurf in December of 2014. FieldTurf moved for a protective order that it need not answer the 1303 requests. (D.I. 264.) FieldTurf's motion is granted for the following reasons.

First, the requests are untimely. Requests for admission are discovery devices that are "subject to the deadlines set by the Court in its Scheduling Orders." *Freeman v. City of Detroit*, 274 F.R.D. 610, 613 (E.D. Mich. 2011). The Court's scheduling order set May 3, 2013 as the fact discovery deadline in this case. (D.I. 213.) AstroTurf's requests were served on December 15, 2014. It makes no difference that there was a proposed order, which was never entered, that AstroTurf suggested extended the discovery deadline. Fact discovery ended a year-and-a-half prior to the requests, making the requests untimely. For that reason alone FieldTurf's motion for a protective order should be granted.

Second, as an alternative and independent basis for granting FieldTurf's motion, the Special Master finds that the sheer number of requests to admit is unduly burdensome and oppressive. AstroTurf previously objected to FieldTurf's service of 577 requests for admission in this case, describing that number as "abusive on its face." (D.I. 98.) During the hearing on AstroTurf's motion, the Court told the parties that anything more than a few hundred requests

was unreasonable. Ultimately, AstroTurf capitulated on this point, agreeing that the authenticity of documents should be dealt with as part of the pretrial process. *See* 3/20/15 Tr. at 12 (Mr. Bejin: "I think that we do not disagree with the process of having the admissibility of the evidence come later in time.") The Special Master agrees, and sees no reason to make an exception here. As trial approaches the parties should work together consistent with the Court's Practice Guidelines to address the authenticity of certain potential trial exhibits.

### 2) AstroTurf's Motion to Compel

AstroTurf filed a motion to compel "source documents" ostensibly located in a "personal archive" according to a spreadsheet titled "Infill Recipes Evolution." (D.I. 252-1.) The motion is denied.

There is no evidence that any of the documents AstroTurf seeks are missing or have been withheld. FieldTurf represented that it conducted a reasonable search to find documents related to fields installed prior to 1997 and in fact did produce such documents (some of which AstroTurf relies upon to make its invalidity arguments). AstroTurf's claim that something is amiss is purely speculative. *See* 3/20/15 Tr. at 50 ("What you have is the fact they're missing and an inference or speculation that there is something amiss there, but I have been provided no evidence at all.") In fact, AstroTurf admitted in open court that it has no evidence FieldTurf destroyed any documents, or withheld them, either intentionally or negligently. *See* 3/20/15 Tr. at 50 ("You have candidly and straightforwardly, which I appreciate, admitted that you don't have any evidence that they were destroyed or that they were withheld on purpose or even negligently.") For these reasons the motion must be denied.

AstroTurf also requested as part of the relief for its motion that FieldTurf be compelled to produce litigation holds and document retention policies. The proper vehicle to obtain those

documents would have been for AstroTurf to file a motion to compel during the discovery period, which it failed to do. Seeking those documents now under the auspices of this motion is inappropriate. In any event, since AstroTurf requests that relief as part of its motion, which is denied, this request for relief must also be denied.

### 3) AstroTurf's Motion for Sanctions

AstroTurf brought a sanctions motion against FieldTurf, principally alleging that FieldTurf withheld or destroyed specifications and other field-specific documents that were subject to the Court's Orders compelling production of September 16, 2011 and March 20, 2012. (D.I. 260.) This motion primarily has two separate claims, one for discovery sanctions and one for spoliation sanctions. As to both claims, the motion is denied.

AstroTurf has failed to show sanctions are appropriate. Although AstroTurf has claimed FieldTurf failed to produce certain documents, their motion is predicated (either entirely or mostly) upon incorrect statements and assumptions. For many of the specific documents AstroTurf claims FieldTurf failed to produce, FieldTurf actually did produce the documents or they were outside of the date range required to be produced by the court orders. And for documents that AstroTurf asserts should have been produced, FieldTurf provided good and sufficient explanations, including that the documents did not exist, or were not within its possession, or were innocently lost or misplaced in the normal course of business (something AstroTurf admitted occurred with its own files as part of its document collection efforts in this very litigation). In the end, AstroTurf simply failed to provide any evidence that documents required to be produced were withheld by FieldTurf. There is nothing in the record that would justify the drastic action of imposing sanctions on FieldTurf. *See U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 526 (6th Cir. 2012).

As a separate and independent ground for this ruling, the Special Master finds that the motion is untimely. FieldTurf produced these documents in April and May of 2012 and certified full compliance with the Court's order compelling production. The documents were accompanied by an explanation that certain documents were missing and that AstroTurf should contact FieldTurf if they had any questions. That took place three years ago, well before the close of fact discovery, yet AstroTurf just filed this motion in January 2015. Those facts, coupled with AstroTurf's suggestions to the Court during the discovery period that it believed FieldTurf had withheld documents, confirm that good cause does not exist to re-open discovery for the purposes of filing this motion.

AstroTurf also failed to demonstrate that a spoliation finding is warranted. In order to prevail on a claim of spoliation AstroTurf must demonstrate that FieldTurf destroyed documents with a culpable state of mind. *See Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014) ("A party seeking a spoliation sanction because evidence was destroyed must establish . . . that records were destroyed with a culpable state of mind."); *Magnetar Technologies Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 481 (D. Del. 2012) (holding that sanctions were not justified where documents were "accidentally lost or destroyed, or where the failure to produce [them] is properly accounted for"). AstroTurf offers speculative arguments, innuendo, and inferences to justify its motion, but there is simply no evidence that any destruction of documents occurred, let alone with a culpable state of mind.

AstroTurf's discovery and spoliation sanctions claims are, therefore, both denied.

### 4) **FieldTurf and John Rodgers' Motion to Quash**

John Rodgers was FieldTurf USA, Inc.'s Director of Product Quality and Performance

until April of 2014.  While at FieldTurf, Mr. Rodgers performed analyses concerning the infill depth of plaintiffs' products, including those covered by the patent at issue in this case. AstroTurf served a Notice of Issuance of Third Party Subpoena to John Allen Rodgers (the "Subpoena") on January 19, 2015.  The Subpoena noticed Mr. Rodgers' *de bene esse* deposition upon oral examination and production of documents on February 4, 2015.  Plaintiffs and Mr. Rodgers jointly moved to quash the Subpoena on February 3, 2015, arguing that the subpoena was untimely, unduly burdensome, and sought irrelevant information.  (D.N. 270.)  AstroTurf filed an opposition to the Motion on February 20, 2015.  (D.N. 278.)  Plaintiffs and Mr. Rodgers filed a reply on March 9, 2015. (D.N. 281.)

AstroTurf contends that FieldTurf concealed the existence of Mr. Rodgers and his allegedly central role from AstroTurf by not identifying him in plaintiffs' Rule 26 (f) disclosures or in interrogatory answers as a knowledgeable person with respect to the installation of FieldTurf products.  Further, AstroTurf contends that FieldTurf improperly redacted a document entitled "Development Infill Recipe Investigation (XT/XM)" co-authored by Mr. Rodgers (Exh. C to motion) and withheld other relevant documents, such as Mr. Rodgers' "Analysis of Light Rubber in Infill Installations," which AstroTurf obtained in September, 2014, from another party (TenCate) suing FieldTurf in unrelated litigation.  FieldTurf denies that it concealed Mr. Rodgers' existence, and responds that: (1) there were 42 references to Rodgers in documents produced to FieldTurf, (2) the unredacted portions of Exh. C. alone were sufficient to alert FieldTurf to Rodgers' role in performing "infill investigations", and (3) AstroTurf was aware that Rodgers had testified in the TenCate trial – all before the May 3, 2013 discovery cut-off; yet AstroTurf made no effort to depose him until January, 2015.

This controversy is not before the Discovery Master as a motion to compel or for sanctions. The narrow issue presented is whether to permit the deposition of Mr. Rodgers after the expiration of the period for fact discovery established by the Court's Scheduling Order. Mr. Rodgers filed a declaration confirming that he has no documents responsive to the Subpoena, and based on Mr. Bejin's representation regarding his conversations with Mr. Rodgers, he does not contend that being deposed would be unduly burdensome. There is no question the discovery sought by AstroTurf is relevant. The Discovery Master finds good cause has been shown for permitting the deposition. The motion to quash, therefore, will be denied. AstroTurf may depose Mr. Rodgers at a location convenient for him for no more than 3 and one-half hours, on a date to be agreed upon by the parties and him.

5) **FieldTurf's Request to Compel Testimony**

FieldTurf seeks to compel testimony related to AstroTurf's efforts to design around the claims of the '412 patent. This request was made pursuant to the informal procedures established by the Discovery Master to expedite the resolution of discovery disputes. (D.I. 277.) The request is granted.

AstroTurf's President, Bryan Peeples, was offered as a Rule 30(b)(6) witness on a long list of topics, and among them was Topic 12: "Any efforts considered or taken by AstroTurf to design around the claims of the '412 patent, and any actions specifically not undertaken by AstroTurf because of the absence of a patent infringement complaint against AstroTurf concerning the '412 patent prior to June 2010." As AstroTurf's 30(b)(6) designee on the issue of design around efforts, Mr. Peeples had a duty to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).[1] But early on in the deposition, Mr.

---

[1] *See also*, *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 1196606, at *14 (S.D. Ohio Mar. 25, 2013) ("The corporation's designee must be 'knowledgeable about the subjects described in the notice' and the corporation must 'prepare that witness to testify not just to his or her own knowledge, but the

Peeples candidly admitted that he was "not prepared" to testify on the design-around topic, and, further that he had not reviewed any documents or spoken to anyone at AstroTurf about this topic. As a result, FieldTurf never received the testimony of a witness properly prepared to testify on this topic.

In its defense, AstroTurf claims that AstroTurf never attempted to design around the patent or that the changed product may be covered by a license. While the Special Master need not definitively determine whether that is true at this stage, according to the witness's own testimony AstroTurf did attempt such a design around: when asked, "Going to a 2 inch pile was an effort taken by AstroTurf to design around the 412 patent; correct?" Mr. Peeples answered "Yes." This alone is sufficient to justify the need for discovery on this topic. Whether the change is one that means the product is covered by a separate license is a legal determination outside the purview of the Special Master's assignment.

Given the relevance of this information, the only question is whether FieldTurf unduly delayed in making this request, which was initiated in February 2015. The Special Master finds that FieldTurf proceeded expeditiously. FieldTurf promptly filed a motion to compel documents related to AstroTurf's design around efforts within a few weeks after the Peeples deposition. (D.I. 219.) The Court granted FieldTurf's motion in September 2014, ordering AstroTurf to produce those documents, to the extent they exist, by October 10, 2014. (D.I. 248) AstroTurf completed its production related to the Court's order in December 2014. Based on what it learned from AstroTurf's production, and based on Mr. Peeples' admitted lack of preparation to testify about Topic 12 at his 30(b)(6) deposition, FieldTurf moved to compel testimony related to AstroTurf's design around efforts just weeks after the documents were produced. FieldTurf properly waited for the Court to rule on that motion before moving to compel additional

---

organization's knowledge.'").

testimony on the design around, so that it would have the benefit of using those documents in the deposition.

Among the new information uncovered by FieldTurf is evidence it contends demonstrates AstroTurf's efforts to conceal or consciously avoid the creation of evidence of infringement. A 2014 email written by one of AstroTurf's employees, Yvonne Swanson, contained the following question: "On these technical data sheets attached, are we still not filling in the infill portion because of our friends at FT? I just want to make sure." FieldTurf contends that this document explains why AstroTurf's document productions lack crucial evidence related to the infill depth of many AstroTurf fields. FieldTurf also seeks to compel AstroTurf to produce Ms. Swanson for a one hour 30(b)(1) deposition related to AstroTurf's pattern and practice of not writing down infill depth.

Because AstroTurf failed to produce a prepared witness on a properly noticed 30(b)(6) topic, FieldTurf is entitled to a half day 30(b)(6) deposition on Topic 12 from Mr. Peeples' May 2013 deposition. In addition, AstroTurf is granted the option of providing its 30(b)(6) witness on the topic of whether AstroTurf has engaged in systematic efforts to conceal infill depth by not including it on technical data sheets and other documents related to its fields, or of offering Yvonne Swanson for a one-hour 30(b)(1) deposition.

**Summary of Recommendations**

As detailed above, the Discovery Master recommends the Court enter the following Orders regarding the pending discovery motions:

1. Plaintiffs' motion for a protective order related to Defendant's 1303 requests for admission (D.I. 264) is granted because the requests were untimely and unduly burdensome.

2. Defendant's motion to compel (D.I. 252) is denied because there is no evidence that any of the documents AstroTurf seeks are missing or were intentionally withheld.

3. Defendant's motion for sanctions (D.I. 260) is denied because there is no evidence to support it and the motion is untimely.

4. Plaintiffs and John Rodgers' motion to quash (D.N. 270) is denied.  Defendant may depose Mr. Rodgers at a location convenient for him for no more than 3 and one-half hours on a date to be agreed upon by the parties and Mr. Rodgers.

5. Plaintiffs' request to compel testimony is granted.  Defendant must produce a 30(b)(6) witness for a half-day on the original topic 12 of Mr. Peeples' 30(b)(6) notice.  Defendant must also produce a witness to testify on the topic of its alleged efforts to avoid writing down infill levels.  Defendant has two options: (1) it may offer the same 30(b)(6) witness it is offering related to design around efforts on this topic, or (2) it may offer Yvonne Swanson for a one hour 30(b)(1) deposition on this topic.

## Further Proceedings

Pursuant to Federal Rule of Civil Procedure 52(f)(2) and the Order Regarding Discovery Masters' Supervision and Management of Discovery Disputes and Other Discovery-Related Issues previously entered by the Court (D.I. 277 (February 20, 2015) ("Procedural Order")), any party may file objections with the Court – or a motion to adopt or modify – the Discovery Master's recommendations within 21 days after service of this Report and Recommendation.  Both parties have agreed to abide by the Discovery Master's recommendations unless and until they are modified by the Court.  Procedural Order, Section I(2)(i).

**APPROVED**

Dated: April 14, 2015                              /s/Greg P. Lindstrom, Esq.
                                                   Gregory P. Lindstrom, Esq.
                                                   Discovery Master