UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIELDTURF USA INC. and TARKETT INC.,

    Plaintiffs,

v.

ASTROTURF LLC,

    Defendant.
                                            /

Case No. 10-cv-12492

HONORABLE STEPHEN J. MURPHY, III

## ORDER FOR SANCTIONS

The issue currently before the Court is whether Plaintiffs Fieldturf USA and Tarkett Inc. engaged in improper conduct during discovery.[1] The Court has reviewed the filings and finds that plaintiffs acted in bad faith by not turning over the 2000 License Agreement in a timely fashion. Fieldturf's failure to find and turn over relevant documents led to extensive, needless litigation. It wasted the Court's time and distracted Astroturf's counsel from trial preparation. The Court will therefore order Fieldturf to pay Astroturf's attorney's fees incurred preparing document numbers 284 and 290, as well as preparing for and conducting the August 27th evidentiary hearing.

## BACKGROUND

Fieldturf filed the present case in 2010, alleging that Defendant Astroturf had constructed roughly six hundred fields that infringed its patent rights. After discovery commenced, Astroturf filed a Document Request, which purportedly requested "[a]ll documents and things that evidence that Fieldturf USA, Inc. is the exclusive licensee from

---

[1] For the duration of the opinion, the Court will refer to Fieldturf as the patent owner, even though the corporate entity went through numerous name changes during the relevant period. Similarly, the Court will refer to Fieldturf USA to mean the Fieldturf entity selling turf in the United States.

Fieldturf Tarkett, Inc. under the '412 patent." Mot. Dism. 7, ECF No. 284. Fieldturf responded that they would produce "non-privileged, relevant documents responsive to Request No. 41 sufficient to show the rights that Fieldturf USA, Inc. and Fieldturf Tarkett, Inc. have in the '412 patent."[2] *Id.* at 7–8. Fieldturf did not provide the requested licenses; and Astroturf did not file a motion to compel Fieldturf to produce the documents.

For more than two years, the parties engaged in considerable fact discovery, which closed on May 3, 2013. ECF No. 213. Notwithstanding the Court's scheduling order, the parties agreed to postpone discovery on financial matters relating to damages until after the Court decided the summary judgment motions. The summary judgment stage of litigation ended September 29, 2014, when the Court denied Astroturf's motion for reconsideration. ECF No. 250.

The parties then sent the Court a letter stating that the parties would engage in discovery related to financial information until January 15, 2015. ECF No. 251-1. Fieldturf provided its first set of documents on January 2. The documents did not include any license showing that Fieldturf USA was an exclusive licensee. By letter, Astroturf notified Fieldturf that they did not "receive the license that exists between Fieldturf Tarkett and Fieldturf USA including a schedule of royalty payments made by Fieldturf USA to Fieldturf Tarkett." Mot. Dism., Letter January 5, 2015, ECF No. 284-9. The letter also informed Fieldturf that it needed the evidence prior to conducting its Rule 30(b)(6) deposition.

Two weeks later, Fieldturf produced a Joint Venture Agreement ("JVA"). The JVA was an agreement entered into between Fieldturf and Tarkett Inc, a company that sells turf in

---

[2] Astroturf did not attach Document Request No. 41 to its motion. The request does not appear anywhere else in the record. Fieldturf does not dispute the content of Request No. 41, or the accuracy of its response. Resp. 6, ECF No. 287.

Europe. Under Section 6.6 of the JVA, Fieldturf agreed to grant Fieldturf Canada, Inc. an exclusive license to use its intellectual property. Fieldturf Canada would then grant an exclusive sublicense to Fieldturf USA to manufacture and distribute turf in the United States. Daliere Testimony, JVA § 6.6, ECF No. 310-2. Fieldturf USA was not a party to the JVA. And nothing in the JVA itself granted Fieldturf USA an exclusive license.

On February 25, Fieldturf's attorney emailed Astroturf's attorney confirming that the JVA was the only written evidence of an exclusive license. Mot. Dismiss, Letter February 25, 2015, ECF No. 284-14. A few weeks later, Astroturf deposed Eric Daliere, Fieldturf's Rule 30(b)(6) witness. Much of the deposition involved Fieldturf's corporate structure, and any evidence that Fieldturf USA was an exclusive licensee. During the deposition, Daliere stated that he was "not aware of a separate license agreement, other than what is provided for in the JV agreement." Reply, Daliere Dep. 26:9-10, ECF No. 292-3.

On March 30, Astroturf filed a motion to dismiss. ECF No. 284. The motion argued that Fieldturf USA was not the '412 patent's exclusive licensee. In support, it noted that the JVA did not itself create an exclusive license. It alleged that there was no other written exclusive license agreement between Fieldturf and Fieldturf USA. And it argued that the history of royalty payments were equally consistent with a bare license as with an exclusive license.

Fieldturf responded to the motion on May 5. It attached a 2000 License Agreement to the motion that had not previously been disclosed. The agreement purported to give Fieldturf USA an exclusive license to several patents. Resp., License Agreement, ECF No. 287-17. Astroturf filed a Reply, arguing that the Court should exclude the 2000 License

3

under Civil Rule 37. Reply 1, ECF No. 292. It also argued that the JVA superseded the 2000 License.

The Court held an evidentiary hearing on August 27 solely to determine whether Fieldturf USA was an exclusive licensee.[3] A few days after the hearing, the Court issued an order denying Astroturf's motion to dismiss, reasoning that the 2000 License clearly granted Fieldturf USA an exclusive license.

## DISCUSSION

The issue is whether Fieldturf's May 5, 2015 production of the 2000 License Agreement was proper. Astroturf argues that Fieldturf failed to make proper initial disclosures and that the evidence should therefore be automatically excluded under Civil Rule 37(c)(1).[4] That Rule applies when a "party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). Rule 26(a) requires that each party provide "a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party

---

[3]The evidentiary hearing lasted more than half a day in which the Court had scheduled additional, pressing matters in criminal cases. FieldTurf's counsel offered to take some of the time in the evidentiary hearing to argue discovery matters, but the Court declined the offer. To the extent that AstroTurf's counsel argued discovery matters in the evidentiary hearing, the Court has disregarded the argument. The record and briefing in the case fully supports the Court's decision today, and no hearing on the sanctions matter was necessary. Local Rule 7.1.

[4]Even if the Court found Civil Rule 37(c)(1) applicable, it would not exclude the evidence. While Astroturf claims that the License is automatically excluded under Rule 37(c)(1), the rule states that "instead" of excluding the evidence, the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). The alternative sanction is more appropriate to address FieldTurf's behavior here for all of the reasons listed below.

4

has in its possession, custody, or control and may use to support its claims or defenses."[5] Fed. R. Civ. P. 26(a)(1)(A)(ii).

But Rule 37(c)(1) is not the proper mechanism for ruling on sanctions under these circumstances. Rule 26(a) does not require parties to produce the documents that they intend to rely on to support their claims or defenses. Rather, "a listing of the materials by category also suffices. The objective of such a listing is to enable the other parties to make informed decisions about which documents they should request be produced pursuant to Rule 34, and to enable them to frame document requests that will avoid squabbles about wording." 8A Charles Alan Wright, Arthur R. Miller & Richard L Marcus, *Federal Practice and Procedure* § 2053 (3d ed. 2010).

The Court is loath to find that Fieldturf violated Rule 26(a), because standing was not a litigated issue in the case until 2015. Furthermore, Astroturf was able to craft detailed discovery requests under Civil Rule 34, and indeed requested documents showing that Fieldturf USA was an exclusive licensee. The issue is not that Fieldturf failed to tell Astroturf where the documents were located; the issue is that, when requested, Fieldturf either failed to look for the license or to turn it over.

Furthermore, sanctions under Civil Rule 37(d) also appear inappropriate. That rule allows the Court to order sanctions when "a party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). Astroturf filed a document request under Rule 34; Fieldturf responded to the request, stating that they would turn over documents showing

---

[5] Astroturf has not specified what portion of Rule 26(a) it believes Fieldturf failed to comply with.

5

Fieldturf USA had an exclusive license. Mot. Dismiss 7–8, ECF No. 284. Because Fieldturf filed a response to the Rule 34 request, sanctions under Rule 37(d) are inapplicable.

Nonetheless, sanctions are appropriate under the circumstances present here. The Supreme Court has held that a court may impose sanctions under its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quotation marks omitted); *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 854 (6th Cir. 2010) ("Finally, a court has inherent authority to sanction bad-faith conduct in litigation.").

The Court finds that Fieldturf acted in bad faith. Fieldturf has not made any showing that it diligently looked for the 2000 License Agreement. Its only explanation is that the parties agreed to put off discovery on financial matters until after the Court had ruled on summary judgment. But the Court concluded the summary judgment phase in September of 2014; Fieldturf did not turn over the 2000 License Agreement until May of 2015. There is no plausible explanation why it took eight months to find the license. Furthermore, the parties agreed to disclose all financial documents by January of 2015 (Fieldturf contends that the license was a financial document, subject to that agreed-to deadline). But Fieldturf did not turn the license over until four months later.

Moreover, during January of 2015 Astroturf repeatedly asked for all written documents supporting an exclusive license. Fieldturf's attorney incorrectly stated that there were no documents other than the JVA showing an exclusive license. The incorrect statement directly undermined Astroturf's ability to depose Eric Daliere, Fieldturf's Rule 30(b)(6) witness. And Fieldturf's failure to turn over the documents caused Astroturf to file a motion to dismiss on the grounds that Fieldturf USA was not an exclusive licensee. The

Court probably would have granted Astroturf's motion absent the 2000 License Agreement. But once Fieldturf turned over the license and the Court heard argument, it became clear that the 2000 agreement granted Fieldturf USA an exclusive license.

In short, Fieldturf's failure to look for or turn over the 2000 License Agreement has caused a substantial amount of vexatious litigation in the case. That litigation increased Astroturf's attorney's fees and distracted the parties from preparing for the September 15 trial. It also wasted a considerable amount of the Court's time.

While the Court finds that sanctions are appropriate, the Court disagrees with Astroturf over the appropriate penalty. Astroturf argues in its brief that the Court should exclude the 2000 License. But the Court finds that payment of attorney's fees is preferable for several reasons. In determining an appropriate sanction, courts tend to balance the severity of the sanction in proportion to the severity of the alleged discovery abuse. *See Adkins v. Wolever*, 692 F.3d 499, 503–04 (6th Cir. 2010). In this instance, excluding the 2000 License is the functional equivalent of dismissing Fieldturf USA from the case; without the license, the Court probably would not have found Fieldturf USA to be an exclusive licensee. That decision would be especially unfair because Fieldturf's tardiness in turning over the license does not have any impact on the merits of infringement or the counterclaims related to invalidity — the issues that the parties will present at trial. Rather, the harm is that the failure to turn over the license caused Astroturf to waste its time litigating a meritless issue. That harm is proportionally compensated through attorney's fees.

## CONCLUSION

7

The Court will award Astroturf its fees incurred preparing document numbers 284, 290, as well as preparing for and conducting the August 27th evidentiary hearing. Astroturf should present detailed documents within twenty-one (21) days evincing the time spent on each task, as well as its hourly rate. Fieldturf will thereafter have fourteen (14) days to object to the fees' reasonableness.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Fieldturf pay Astroturf's reasonable attorney's fees incurred in preparing document numbers 284 and 290, as well as preparing for and conducting the August 27th evidentiary hearing.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 4, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 4, 2015, by electronic and/or ordinary mail.

s/M. Beauchemin
Case Manager