# Exhibit 3

2:10-cv-12492-SJM-MJH   Doc # 425-2   Filed 11/13/15   Pg 2 of 6   Pg ID 21784
Jury Trial: Volume 4 • Tuesday, September 22, 2015

1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MICHIGAN
 2                      SOUTHERN DIVISION

 3
     FIELDTURF USA, INC. and
 4   FIELDTURF TARKETT, INC.,

 5              Plaintiffs,       Case No. 10-12492
     vs.                          Hon. Stephen J. Murphy, III
 6
     ASTROTURF, LLC,
 7
                Defendant.
 8   _____/

 9                    JURY TRIAL - VOLUME 4

10       BEFORE THE HONORABLE STEPHEN J. MURPHY, III
                 United States District Judge
11         Theodore Levin United States Courthouse
               231 West Lafayette Boulevard
12                Detroit, Michigan  48226
               Tuesday, September 22, 2015
13
     APPEARANCES:
14
     For the Plaintiff          DEREK J. SARAFA
15   FieldTurf USA, Inc. and    MICHAEL L. BRODY
     FieldTurf Tarkett, Inc.:   KEVIN E. WARNER
16                              Winston & Strawn, LLP
                                35 W. Wacker Drive
17                              Chicago, Illinois  60601-9703
                                312-558-5600
18
     For the Defendant          MARTIN F. GAYNOR, III
19   AstroTurf, LLC:            LAWRENCE K. DE MEO
                                HOWARD P. GOLDBERG
20                              Manion Gaynor and Manning LLP
                                21 Custom House Street
21                              Boston, Massachusetts  02110
                                617-607-8800
22
                                THOMAS E. BEJIN
23                              Bejin Bieneman PLC
                                300 River Place
24                              Suite 1600
                                Detroit, Michigan  48226
25                              313-528-4882
```

1    MR. DE MEO:  Yes, that goes to a legal question.
2    That's not -- not -- it has nothing to do with his expertise as
3    an -- as a material scientist.  It's not what he's qualified to
4    speak to today.
5    	THE COURT:  Okay.  I think he can -- he can answer
6    the question "Does one need more information?" yes or no.
7    What's the answer to that question?  With the claim
8    construction that the Court made, Dr. Hawkins, does one need
9    more information to know if a field were to fall within or
10   without the two-thirds, more information than what's in the
11   claim construction?
12   	THE WITNESS:  My answer, Your Honor, is yes.
13   	THE COURT:  Okay.  Very good.
14   	Now, I think you can go from there, but you can't
15   have him -- you can't have him testify on the measurements of
16   direct fields of infringement.  He can talk about what in his
17   mind would amount to a violation of that standard that might
18   infringe.  You understand?
19   	MR. WARNER:  I do.
20   	THE COURT:  Okay.
21   	MR. WARNER:  What I was going to ask the witness is
22   to explain what the degree of approximation is in his view.
23   	THE COURT:  Okay.  Go right ahead.
24   BY MR. WARNER:
25   Q.   So Dr. Hawkins, where the claim says that "the -- the

2:10-cv-12492-SJM-MJH   Doc # 425-2   Filed 11/13/15   Pg 4 of 6   Pg ID 21786
Jury Trial: Volume 4 • Tuesday, September 22, 2015

49

1  degree of approximation is covered by the -- that is covered by
2  the claim is defined by the ability of those reasonably skilled
3  in the art building artificial turf surfaces to deposit
4  particulate matter into a surface at a uniform thickness," my
5  question for you is, in your view, what is that degree of
6  approximation?
7  A.  Based on my experience of this type of system, it's
8  possible to get two-thirds accurate to within plus or minus 1/8
9  of an inch.
10 Q.  So in the context of this case where we're talking about
11 fields from say 2 to 2-1/2 inches, what's that degree of
12 approximation?
13 A.  In terms of percentage?
14 Q.  Yes.
15 A.  In terms of percentage, if you work that out, exactly
16 two-thirds with plus or minus 1/8 of an inch, it actually works
17 out to 61 to 72 percent.
18 Q.  Okay.  So with that background -- and there are some other
19 terms obviously that we went through in the patent for claim
20 12.  What meanings did you give to those terms when you
21 analyzed infringement?
22 A.  I gave them their plain and ordinary meaning.
23 Q.  Okay.  So I want to turn then to the analysis that you did
24 about whether or not the accused Astroturf artificial turf
25 products infringe claim 12, and then we'll talk about some of

1  Q. Yes.
2  A. Well, having looked through all the documents that I've
3  looked through, my opinion is that the GameDay Grass products
4  infringe the patent.
5  Q. And how about the Astroturf GT products?
6  A. Yes, also.
7  Q. Okay. So can you describe a little bit about the
8  framework that -- how you went about analyzing the question of
9  whether they infringe or not?
10 A. Well, yes. I looked at the claims in the '412 patent. I
11 applied the Court's claim construction to -- to those claims.
12 I then examined the GameDay Grass GT products, compared the two
13 on a point-by-point basis.
14 Q. And what sort of acts of -- by Astroturf or their products
15 did you look at to determine if there was infringement?
16 A. In terms of the acts, I've looked at offers to sell the
17 products, sales of the products, what Astroturf has said they
18 will install and what they have actually installed. I've
19 looked at all of those things insofar as I've had the
20 information available.
21 Q. Did you -- did you look at infringement from the -- from a
22 particular perspective, sir?
23 A. Yes. I'm -- I have to look at it from the perspective of
24 a person of ordinary skill in the art.
25 Q. And did you bring a -- a demonstrative to help understand

2:10-cv-12492-SJM-MJH   Doc # 425-2   Filed 11/13/15   Pg 6 of 6   Pg ID 21788
Jury Trial: Volume 4 • Tuesday, September 22, 2015

52

```
 1   what that person is, in your view?
 2   A.  Yes, I have, yes.
 3           There we are.  I consider a person of ordinary skill
 4   in the art to have five or more years of experience in the
 5   design, development, installation and analysis of synthetic
 6   turf systems and to have an appropriate level of formal
 7   education or equivalent experience that would qualify them to
 8   work in that capacity.
 9   Q.  Very good, sir.  Did you -- in the -- in terms of the
10   fields that you looked at, did you look at every single
11   installation that Astroturf has ever done?
12   A.  No.  As I mentioned before, I haven't been given
13   information on all of them.
14   Q.  Okay.  Of all the ones that you looked at, did you
15   determine that every one of them infringes?
16   A.  No, no, I didn't.  There have been fields where I had
17   received information which led me to believe that they didn't
18   infringe.  And when I've had that situation, then I've taken
19   them off my list of infringing fields and I don't -- I don't
20   opine that those -- those fields infringe.
21   Q.  Okay.  So at the end of the day, how many -- how many
22   installations did you conclude infringe at least one claim of
23   the '412 patent?
24   A.  Um, the total I believe is 676.
25   Q.  Okay.  And if you take actually --
```