# Exhibit A



**IT IS ORDERED as set forth below:**

**Date: September 5, 2017**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Chapter 11 |
| ASTROTURF, LLC, | : | |
| Debtor. | : | Case No. 16-41504-pwb |
| _____ | : | |
| | : | |
| TEXTILE MANAGEMENT | : | |
| ASSOCIATES, INC.,WILLIAM BRYAN | : | |
| PEEPLES, and GEORGE THOMAS PEEPLES, | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. No. 17-04005-pwb |
| | : | |
| FIELDTURF USA, INC., AND TARKETT, INC., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

# ORDER ON MOTION TO DISMISS OF
# FIELDTURF USA, INC., AND TARKETT, INC.

# Introduction and Summary

FieldTurf USA, Inc., and Tarkett, Inc. (collectively, "FieldTurf") have a claim against the Chapter 11 debtor, AstroTurf, LLC ("AstroTurf"), for patent infringement. FieldTurf's infringement lawsuit against AstroTurf (the "Patent Case")[1] is pending in the United States District Court for the Eastern District of Michigan (the "District Court").

FieldTurf wants to add the owners of AstroTurf (Textile Management Associates, Inc. ("TMA"), William Bryan Peeples, and George Thomas Peeples (collectively, the "TMA Parties")), as additional defendants in the Patent Case to establish their liability for AstroTurf's patent infringement through the prosecution of alter ego and veil-piercing claims under Georgia law and a patent inducement claim under 35 U.S.C. § 271(b).

The TMA Parties filed this adversary proceeding to prevent FieldTurf's prosecution of alter ego and veil-piercing claims. They contend that FieldTurf is asserting claims of AstroTurf that AstroTurf released as part of a global settlement in its Chapter 11 case among AstroTurf, TMA, certain of their affiliates, and the Committee of Unsecured Creditors (the "Committee"). FieldTurf insists that the release does not cover its claims.

---

[1] *FieldTurf USA, Inc. v. AstroTurf LLC,* Civil Action No. 10-12492, U.S. District Court for the Eastern District of Michigan.

2

Whether the release bars FieldTurf's claims turns on a distinction Georgia law makes between two types of alter ego and veil-piercing claims. The release includes alter ego and veil-piercing claims that under Georgia law are "General Claims" – those that are common to all creditors – because they are property of AstroTurf's estate under Georgia law.[2] The release does not, however, affect alter ego and veil-piercing claims that are "Specific Claims" – those that involve specific injury to a particular creditor – because, under Georgia law, Specific Claims belong to specifically injured creditors and are not property of the estate.[3]

Although FieldTurf has pleaded its claims in the Patent Case as Special Claims, the TMA Parties contend that FieldTurf's claims are actually General Claims that the release bars. In this adversary proceeding, the TMA Parties request a declaratory judgment that FieldTurf does not have any Specific Claims and an injunction against FieldTurf's prosecution of alter ego and veil-piercing claims in the Patent Case or in any other lawsuit. The TMA Parties also assert that

---

[2] *Baille Lumber Co., LLP v. Thompson (In re Icarus Holding LLC),* 391 F.3d 1315 (11th Cir. 2004), *certified question answered,* 279 Ga. 288, 612 S.E.2d 296 (2005), *ruling after answer,* 413 F.3d 1293 (11th Cir. 2005) (General Claims are property of bankruptcy estate because Georgia law authorizes corporation to bring them).

[3] *Johnson v. Allied Recycling, Inc.,* 323 Ga. App. 427, 746 S.E.2d 728, 733 (2013) (citing *Baille Lumber Co., LLP v. Thompson (In re Icarus Holding LLC),* 391 F.3d 1315, 1321 (11th Cir. 2004), and *Baille Lumber Co., LLP v. Thompson,* 279 Ga. 288, 289, 612 S.E.2d 296 (2005)).

FieldTurf breached the settlement agreement and violated this Court's order approving it (the "Settlement Order")[4] and seek attorney's fees and other relief.

FieldTurf has filed a motion to dismiss the TMA Parties' complaint under Fed. R. Civ. P. 12(b)(6), *applicable under* Fed. R. Bankr. P. 7012, for failure to state a claim on which relief can be granted. The motion also requests that the Court decline to hear the declaratory judgment action.[5]

The Court in Part III concludes that the TMA Parties' complaint states a claim for a declaratory judgment under 28 U.S.C. § 2201 that FieldTurf does not have any Specific Claims and a claim for declaratory relief based on such a claim and for related relief, such as an injunction, under 28 U.S.C. § 2202. (Part III(C)). Because FieldTurf was not a party to the settlement agreement and because it has pleaded a colorable Specific Claim in the Patent Case, however, the TMA Parties have not stated any plausible claim for breach of the settlement agreement or violation of the Settlement Order that entitles them to any other relief. (Parts III(A), (B), and (D)).

Part IV considers whether the Court should exercise its discretion to decline to hear the remaining claim for declaratory relief. It explains that the declaratory judgment claim involves a dispute only between nondebtor parties, is governed

---

[4] Order Authorizing and Approving Settlement Agreement (Aug. 31, 2016), *In re AstroTurf, LLC,* Case No. 16-41504, Bankr. N.D. Ga., Doc. No. 224 (the "Settlement Order").
[5] FieldTurf's motion alternatively requests that the Court stay this adversary proceeding or transfer it to the District Court.

4

solely by Georgia law without any consideration of bankruptcy law, and will not affect any interest of the estate or creditors in AstroTurf's Chapter 11 case. For these and other reasons, the Court concludes, in the exercise of its discretion, that it is not appropriate for the Court to hear the declaratory judgment action and declines to do so. (Part IV(A)). For the same reasons, the Court *sua sponte* concludes alternatively that it should abstain from hearing the declaratory judgment claim under the permissive abstention provisions of 28 U.S.C. § 1334(c)(1).[6]

## Jurisdiction

The TMA Parties' complaint states that this proceeding: (1) arises under the Bankruptcy Code, or arises in or relates to, AstroTurf's Chapter 11 case, such that bankruptcy jurisdiction exists under 28 U.S.C. § 1334(b); and (2) is a core proceeding under 28 U.S.C. § 157(b)(2) because it involves matters relating to the administration of the estate and the distribution of its assets.

The Court concludes that the United States District Court for the Northern District of Georgia has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) and that it has been referred to this Court under 28 U.S.C. § 157(a) and LR 83.7, NDGa.

The Court has authority to enter an order on FieldTurf's motion. If it is a core proceeding, the Court can determine it under 28 U.S.C. § 157(b)(1). If it is not

---

[6] In view of these rulings, the Court does not consider FieldTurf's alternative requests to transfer this adversary proceeding to the District Court or to stay it.

a core proceeding, the parties have consented to the Court's determination of the motion under 28 U.S.C. § 157(c)(2).[7]

# I. Facts and Procedural Background[8]

FieldTurf's claim against AstroTurf arises from the Patent Case in the District Court. On October 9, 2015, after five years and four months of litigation, a jury returned a verdict in favor of FieldTurf finding AstroTurf liable and awarding damages of $30 million.

AstroTurf filed its Chapter 11 petition on June 28, 2016. At that time, the District Court had not entered judgment on the jury verdict, and some 14 motions were pending. The District Court administratively closed the Patent Case because

---

[7] The TMA Parties effectively consent to this Court's determination of this proceeding by asserting that it is a core proceeding.

The Court concludes that FieldTurf consents to the Court's determination of its motion because FieldTurf invokes the Court's determination of it without objecting to its authority to do so. The Court does not consider FieldTurf's invocation of a ruling on its motion to constitute an admission that this is a core proceeding or consent to determination of other issues that may arise in this proceeding. Because FieldTurf filed a motion to dismiss, it was not required to answer the complaint, Fed. R. Civ. P. 12(a)(4), *applicable under* Fed. R. Bankr. P. 7012, or to contest its jurisdictional allegations, *id.* 12(b).

The Court notes that, in any event, this proceeding does not involve any disputed issues of fact. The District Court reviews this Court's conclusions of law de novo regardless of whether it reviews this Court's action as a result of an appeal from a final judgment, *e.g., In re JLJ, Inc.,* 988 F.2d 1112, 116 (11th Cir. 1993), or as the submission of proposed findings of fact and conclusions of law under Fed. R. Bankr. P. 9033.

To the extent that the Court does not have authority to enter an order on FieldTurf's motion, this Order shall constitute proposed findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9033(a).

[8] The Court previously reviewed the proceedings in the Chapter 11 case that this Order discusses in its Order on Motion of FieldTurf, Inc., and Tarkett, Inc., for Relief from Automatic Stay (Mar. 30, 2017) [Case Doc. 390], 2017 WL 1194649. TMA participated in that matter in support of AstroTurf's positions.

References in this Order to "Case Doc." are to the docket in AstroTurf's Chapter 11 case, No. 16-41504. References to "Adv. Doc." are to the docket in this adversary proceeding.

of the automatic stay of 11 U.S.C. § 362(a) that arose upon the filing of AstroTurf's
Chapter 11 case.

From the date that AstroTurf filed its Chapter 11 petition until the date that
the TMA Parties filed this adversary proceeding, AstroTurf, FieldTurf, and TMA
focused their attention on the bankruptcy case. In particular, they litigated
objections to AstroTurf's release of claims against its affiliates (including the TMA
Parties) and the enforcement and termination of the automatic stay with regard to
the Patent Case.

The litigation that resulted in the Court's approval of the settlement (and the
releases it contains) in the Settlement Order informs the Court's interpretation of it,
and the effects of the Court's approval of the settlement on the administration of
this case inform the Court's exercise of discretion with regard to hearing this
declaratory judgment action. Approval of the settlement paved the way for the
Court's approval of the sale of AstroTurf's business, the estimation of FieldTurf's
claim for purposes of distribution in the Chapter 11 case, and the operation of the
automatic stay with regard to the Patent Case. The Court therefore reviews those
proceedings, in which  AstroTurf, TMA, and FieldTurf actively participated.

## A.  The proposed sale of the "Turf Business" of AstroTurf and its affiliates

On the petition date, AstroTurf, TMA, and three nondebtor affiliates (the "Other Sellers")[9] operated the "Turf Business."  The TMA Parties own all of the equity interests in AstroTurf.

The Turf Business consisted of the development, manufacturing, marketing, selling, and installing of artificial turf for athletic fields and landscape applications. AstroTurf and the Other Sellers operated the Turf Business through the interrelated activities of the separate entities that collectively provided the services and materials to conduct the business.  TMA and other affiliates held secured and unsecured claims against AstroTurf arising from the financing of AstroTurf's business and inter-company accounts.

Before the bankruptcy filing, AstroTurf, TMA, and the Other Sellers negotiated agreements for the sale of their parts of the Turf Business to a third party.  The acquisition involved separate asset purchase agreements that had to close simultaneously.  Thus, TMA and the Other Sellers could not sell their assets unless AstroTurf had authority to sell its assets.

---

[9] The Other Sellers are Synthetic Turf Resources, LLC, Crystal Products Co., Inc., and UTGH Equipment LLC.  AstroTurf's Motion to Sell Free and Clear of Liens Under Section 363(f) (the "Sale Motion") [Case Doc. 15] at ¶ 7.

## B. Objections to AstroTurf's sale of assets and proposed global settlement of claims of TMA and its affiliates, including releases of the TMA Parties

Upon the filing of its Chapter 11 case, AstroTurf filed a motion (the "Sale Motion")[10] for approval of the sale of its assets on an expedited basis because of provisions in the asset purchase agreements that imposed deadlines for the Court to approve the sale of the AstroTurf assets and for all of the transactions to close.

FieldTurf and the Committee opposed the Sale Motion. They asserted that they needed more time to evaluate whether the sale was in the best interest of the estate and to investigate issues such as the validity and priority of the secured and unsecured claims of TMA and the Other Sellers and whether any of their claims or security interests would be subject to avoidance under provisions of the Bankruptcy Code. An important concern was whether the allocation of the combined purchase price between AstroTurf and the Other Sellers favored the Other Sellers such that AstroTurf would not receive the full value of its assets.

AstroTurf, TMA, the Other Sellers, and the Committee began discussions with regard to a global settlement of issues concerning the proposed sale and the allocation of its proceeds. The settlement discussions involved resolution of disputes concerning secured and unsecured claims of TMA and other affiliated entities. After mediation conducted by Bankruptcy Judge Wendy Hagenau [Case

---

[10] AstroTurf's Motion to Sell Free and Clear of Liens Under Section 363(f) (the "Sale Motion") [Case Doc. 15].

Doc. 140], they reached a settlement, and AstroTurf filed a motion (the "Settlement

Motion") on August 1 for the Court to consider it.[11]

For present purposes, the material terms of the proposed settlement provided

for: (1) payment of general unsecured creditors (excluding affiliates and FieldTurf)

in full; (2) payment to FieldTurf of the lesser of $ 9.5 million or the allowed amount

of its claim; (3) retention by TMA and nondebtor affiliates holding claims against

AstroTurf of the balance of the proceeds after payment of administrative and

priority claims and other specified claims; and (4) a release of all claims of

AstroTurf, the Committee, and the estate against the TMA Parties, the nondebtor

affiliates, and their officers, directors, managers, members, equity holders,

attorneys, accountants, advisors, consultants and agents.[12]  As part of the settlement,

the Committee agreed to withdraw its opposition to the proposed sale if the Court

approved the settlement.

## C.  FieldTurf's objections to the global settlement and releases and its assertion of claims against the TMA Parties in the Patent Case

FieldTurf objected to the proposed settlement on several grounds, two of

which are material here.

---

[11] AstroTurf's Motion for Entry of an Order Authorizing and Approving Settlement (the "Settlement Motion") [Case Doc. 149].

[12] Settlement Motion [Case Doc. 149] at ¶ 16.  The release did not name William Bryan Peeples and George Thomas Peeples as "Released Parties," but "Released Parties" includes them because they are officers, directors, members, managers, and/or equity holders of the specifically named entities.

First, FieldTurf contended that AstroTurf could not release any alter ego or veil-piercing claims because AstroTurf did not own them and, therefore, they were not property of its estate.   FieldTurf asserted that Michigan law governed this issue and that, under Michigan law, such claims belonged to creditors, not to the estate.

Second, FieldTurf objected to the payment of other unsecured claims in full while it received only partial payment on its claim.

On August 8, 2016, three days before the hearing on August 11 on the Sale and Settlement Motions, FieldTurf filed a motion in the Patent Case (the "Original Motion") to reopen it to file a supplemental complaint (the "Original Complaint") to add the TMA Parties as additional defendants and to assert alter ego and veil-piercing claims against them.[13]  FieldTurf later conceded that its Original Complaint asserted claims against the TMA Parties that are General Claims but insisted that it could and would modify the Original Complaint to assert only Specific Claims.[14] After the Court terminated the automatic stay to permit the Patent Case to proceed, as Part I(J) discusses, FieldTurf filed a revised supplemental complaint in the Patent Case that, it contends, presents Specific Claims that it owns.

---

[13] Complaint [Adv. Doc. 1] ¶¶ 19, 35-38.  See also AstroTurf's Emergency Motion to Enforce the Automatic Stay and For Sanctions [Case Doc. 185] at ¶ 8.

[14] Order on Motion of FieldTurf, USA, Inc., and Tarkett, Inc. for Relief From Automatic Stay at 19 (Mar. 30, 2017) (the "Stay Order")  [Case Doc. 390], 2017 WL 1194649.

## D. AstroTurf's motion against FieldTurf to enforce the automatic stay

Two days after FieldTurf filed its Original Motion in the Patent Case, AstroTurf filed an emergency motion to enforce the automatic stay (the "Stay Enforcement Motion"),[15] asserting that its filing violated the automatic stay.

In the Stay Enforcement Motion, AstroTurf asserted that FieldTurf's motion violated the automatic stay under 11 U.S.C. § 362(a)(1) because it was a continuation of litigation against it, the only party in the Patent Case. AstroTurf explained that, because FieldTurf's assertion of alter ego and veil-piercing claims required FieldTurf to litigate its claims against AstroTurf to judgment before it could pursue the TMA Parties, FieldTurf had to proceed against AstroTurf, and AstroTurf would necessarily be forced to defend itself in the litigation.

In addition, AstroTurf asserted that FieldTurf's actions in the Patent Case violated the stay under 11 U.S.C. § 362(a)(3) as an act to exercise control over property of its estate because the alter ego and veil-piercing claims FieldTurf proposed to pursue were property of AstroTurf's estate.

---

[15] AstroTurf's Emergency Motion to Enforce the Automatic Stay and For Sanctions (the "Stay Enforcement Motion") [Case Doc. 185].

## E.  The Court's rulings on the Sale Motion; the Settlement Motion and the scope of releases of the TMA Parties (and affiliates); and the Stay Enforcement Motion

The Court held a hearing on August 11 and 12, 2016, on the proposed settlement, the proposed sale of the estate's business as a going concern, and the Stay Enforcement Motion.[16]

### 1.  Ruling with regard to applicability of Georgia law to alter ego and veil-piercing claims and the scope of the proposed releases

At the hearing, AstroTurf agreed that it could not release claims it did not own but insisted that Georgia law determined who owned the alter ego and veil-piercing claims and that, under Georgia law, it owned the General Claims.[17] AstroTurf conceded that creditors under Georgia law retain alter ego and veil-piercing claims that are Specific Claims and that the release could not, and did not, cover Specific Claims.

---

[16] The record in the Chapter 11 case includes transcripts of the hearings on August 11 [Case Doc. 221] ("Tr. Aug. 11") and August 12 [Case Doc. 222] ("Tr. Aug. 12").

[17] The parties during colloquy at the hearing on approval of the settlement agreed that either Georgia or Michigan law applies; that under Michigan law, alter ego and veil-piercing claims do not belong to a debtor, and, therefore, are not property of the estate; and that, under Georgia law, General, but not Specific, Claims belong to the estate.  See Tr. Aug 11 [Case Doc. 221], *e.g.,* at 201, lines 16 – 18 (Debtor's counsel:  "The only alter ego claims that can ever be property of a bankrupt estate are generalized claims."; 202, lines 2 – 10 (Debtor's counsel agreeing with the Court that if a Specific Claim exists, it is not affected); 209, line 23 – 210, line 4) (FieldTurf's counsel agreeing with the Court that if Michigan law applies the estate has no claims and that if Georgia law applies the estate does not own Specific Claims).

At the continuation of the hearing on August 12, the Court announced its ruling that Georgia, rather than Michigan, law applied to the determination of whether AstroTurf's bankruptcy estate or individual creditors owned veil-piercing and alter ego claims.[18] Thus, AstroTurf's estate owned General Claims but not Specific Claims.

## 2. *Rulings declining to approve originally proposed settlement and approving settlement as modified*

Based on this determination, the Court overruled FieldTurf's objection that the release would deprive it of claims that it had. Because AstroTurf's estate did not own Specific Claims, it could not release them, and the settlement did not affect any Special Claims that FieldTurf had.[19]

The Court sustained FieldTurf's second objection and declined to approve the settlement. The Court agreed with FieldTurf that the different treatment of FieldTurf's claim precluded approval of the settlement because it was "inconsistent with established principles of the Bankruptcy Code."[20]

AstroTurf and the Committee then proposed a modification of the provisions for distributions to unsecured creditors and FieldTurf to address the Court's ruling. The revised agreement called for creation of an "Unsecured Creditor Pool" of

---

[18] Tr. Aug. 12 at 19 [Case Doc. 222], line 13 – 22, line 15.
[19] Tr. Aug. 12 at 22 [Case Doc. 222], lines 11 – 15.
[20] Tr. Aug. 12 at 26 [Case Doc. 222], lines 9 – 12; see also Tr. Aug. 12 at 26, lines 13  – 31, line 25.

$ 13.5 million to be set aside from the proceeds of the sale for distribution to

unsecured creditors.  FieldTurf would be treated the same as other general

unsecured creditors, who would receive a pro rata share of the pool, with the

percentage distribution depending largely on the final allowed amount of

FieldTurf's claim.[21]  Over FieldTurf's objections, the Court approved the settlement

as revised.[22]

### 3.  *Provisions of the Settlement Order with regard to the scope of the release of alter ego and veil-piercing claims and defining them*

The Court's rulings[23] with regard to the scope of the releases to affiliated

entities (including the TMA Parties) were incorporated in its "Order Authorizing

and Approving Settlement Agreement" (the "Settlement Order").[24]  In the

Settlement Order, the Court found and concluded that "General Alter Ego Claims"

("General Claims" in this Order's terminology) were included in the release and

were property of the estate but that "Specific Claims" were not included in the

release and were not property of the estate.[25]

---

[21] Tr. Aug. 12 [Case Doc. 222] at 32, lines 9 – 33, line 21.  The settlement agreement was reduced
to writing and attached to the Order Authorizing and Approving Settlement Agreement (Aug. 31,
2016) (the "Settlement Order") [Case Doc. 224 at 7 – 24].  Section 2 states the terms for the
funding of the Unsecured Creditor Pool.  [Case Doc. 224 at 10].
[22] Tr. Aug. 12 [Case Doc. 222] at 58, line 5 – 65, line 6.
[23] *Id.* at 19, line 13 – 22, line 15.
[24] Order Authorizing and Approving Settlement Agreement (Aug. 31, 2016) [Case Doc.224].
[25] Settlement Order [Case Doc. 224] at 3-4.  The terms in the Settlement Order differ from the
terms the Court used in its oral ruling because the parties, at the request of the Court, drafted it to

The Settlement Order defined both terms. Thus, "General Alter Ego Claims" are "all alter-ego and veil-piercing claims that are common to all creditors of [AstroTurf's] estate and therefore could be asserted by [AstroTurf] or its estate against any or all of the Released Parties."[26] "Specific Claims" are "claims against the Released Parties that are personal and specific to a particular creditor, including alter-ego claims that could be asserted by a particular creditor but excluding General Alter Ego Claims." The Settlement Order expressly states that Specific Claims include "any Specific Claims consisting of alter-ego or veil-piercing claims (if any) held by [FieldTurf] against any entity, which claims (if any) are deemed to be the property of [FieldTurf]."[27]

The Settlement Order reflected the binding nature of the release in the following language:[28]

> [N]o individual creditor (or group of creditors) of [AstroTurf] shall be entitled to assert any causes of action against any of the Released Parties based on any of the Released Claims. . . . Notwithstanding the foregoing, the Released Claims do not include any Specific Claims.

---

set forth the Court's ruling from the bench in more precise terms. See Tr. Aug. 12 at 143, line 14 – 145, line 15.

[26] Settlement Order [Case Doc. 224] at 3. The TMA Parties are "Released Parties."

[27] *Id.* at 4.

[28] *Id.* at ¶ 5.

In the Settlement Order, the Court retained "jurisdiction to hear and determine all matters arising from the implementation of this Order and the Revised Settlement Agreement."[29]

### 4. Ruling approving the proposed sale of AstroTurf's assets

After the Court ruled that it would approve the settlement, the Committee withdrew its opposition to the sale and to the Court's approval of it.

FieldTurf opposed the sale, raising two principal arguments. First, FieldTurf contended that the sales process had been so expedited that it and other creditors had not had time to evaluate whether the sale was in the best interest of the estate. Second, FieldTurf argued that AstroTurf's share of the total consideration for the assets of all of the selling entities was inadequate.[30]

The Court approved the sale,[31] concluding that, in the context of the settlement – which was conditioned on the sale being approved – the sale was in the best interest of the estate. In summary, the Court concluded that the sale and the settlement together unquestionably produced more value for the estate and its unsecured creditors (including FieldTurf) than they would get even if the allocation

---

[29] *Id.* at ¶ 6.
[30] Tr. Aug. 12 [Case Doc. 222] at 129, line 23 – 131, line 2.
[31] Tr. Aug. 12 [Case Doc. 222] at 131, line 6 – 138, line 6. The Court on August 12, 2016, entered a written order approving the sale. [Case Doc. 202].

of sales proceeds to AstroTurf were increased by the largest amount the evidence

showed could be appropriate.[32]

### 5. Deferral of consideration of the Stay Enforcement Motion

The Court deferred consideration of AstroTurf's Stay Enforcement Motion

pending further discussions among counsel.[33]

## F. Entry of Order for estimation of FieldTurf's claim for purposes of allowance and distribution in the Chapter 11 case

After the Court approved the sale and the settlement, AstroTurf and the

Committee filed a motion to estimate FieldTurf's claim pursuant to 11 U.S.C.

§ 502(c). [Case Doc. 229].  FieldTurf agreed to estimation of its claim for purposes

of distribution in AstroTurf's case.  The parties agreed to the appointment of a

Special Purpose Examiner to evaluate FieldTurf's claim and the likely outcome of

the Patent Case and any appeal and to provide a report to the Court with a

recommendation of the amount that the Court should allow as the estimated claim.

On September 22, 2016, the Court entered an Order for the estimation of the

claim and approved the appointment of retired Eleventh Circuit Court of Appeals

Judge Stanley F. Birch, Jr., as the Special Purpose Examiner.  [Case Doc. 241].

The Order required the Examiner to file his report on or before January 3, 2017.

---

[32] Tr. Aug. 12 [Case Doc. 222] at 136-137.
[33] Tr. Aug. 12 [Case Doc. 222] at 145, line 20 – 155, line 16.

The Court scheduled a status conference for January 10, 2017, to consider
procedures for the Court to estimate the claim.

## G.  FieldTurf's motion for relief from the automatic stay to proceed in the Patent Case

Two weeks later, on October 5, 2016, FieldTurf filed a motion for relief from
the automatic stay (the "Stay Relief Motion") to permit it to proceed in the Patent
Case.  [Case Doc. 260].  FieldTurf wanted to seek entry of judgment on its jury
verdict and other claims against AstroTurf as well as to pursue its claims against the
TMA Parties.

The Court held a hearing on the Stay Relief Motion on November 1.  At the
hearing, the Court determined that the Examiner should complete his report and
make a recommendation with regard to estimation of the claim before the District
Court resolved pending matters in the Patent Case and decided whether to enter
judgment on the jury verdict.[34]  Although the Court concluded that the automatic
stay should not prevent FieldTurf from pursuing its claims against the TMA Parties
in the Patent Case, the Court left the stay in place in its entirety to avoid potential
complications that might arise in the Patent Case if the Court lifted the stay for
some purposes but not for others.[35]

---

[34] Transcript of hearing on Nov. 1, 2017 ("Tr. Nov. 1") [Case Doc. 288] at 80, line 18 – 87, line 1.
[35] Tr. Nov. 1 [Case Doc. 288] at 84-85.

The Court announced that, because no reason would exist for continuation of the automatic stay in the Patent Case once estimation occurred, the Court would enter an order lifting the stay upon entry of an order estimating FieldTurf's claim[36] and scheduled a status conference for January 10, 2017, in connection with the status conference on estimation.[37]  The Court entered an interim order maintaining the stay in effect based on its oral ruling at the hearing.  [Case Doc. 302].

At the November 1 hearing, the Court indicated that it would not decide the issue of whether FieldTurf's claims against the TMA Parties were General or Specific Claims in the context of the Stay Relief Motion.   In this regard, the Court stated:

> [O]nce I make my decision [on estimation] then as far as I'm concerned all bets are off and the litigation in Michigan goes forward against everybody else, and off we go[38]. . . .[W]hen I enter the order saying I estimate the claim at X, I'm going to enter an order that says the stay is terminated. . . .  I propose to enter an order that would terminate – modify the stay to permit that litigation to go forward as [FieldTurf] requested at the same time.[39]

---

[36] Tr. Nov. 1 [Case Doc. 288] at 86-87.
[37] Tr. Nov. 1 [Case Doc. 288] at 87, line 23 – 88, line 89, line 6.
[38] Tr. Nov. 1 [Case Doc.  288] at 86, line 20 – 87, line 1.
[39] Tr. Nov. 1[Case Doc. 288] at 87, lines 15-22.

TMA's counsel inquired as to whether anything precluded TMA from bringing an affirmative request for such relief.[40]   After noting that the inquiry resembled a request for an advisory opinion, the Court responded:

> If you want an injunction you need an adversary proceeding.  And I think if you want to enjoin [FieldTurf] from doing something, they've got to propose to do it first, because equity won't enjoin a tort or a lawsuit, I don't think. . . . I mean, the point is until [FieldTurf files] something that says this is what they want to sue you for I don't know what I can do.[41]

## H.  Final order estimating and allowing FieldTurf's claim

The Court extended the time for the Examiner to file his report to February 1, 2017 [Case Doc. 324], and rescheduled the status conferences on the estimation procedures and FieldTurf's Stay Relief Motion to February 7.  [Case Doc. 321].

The Examiner filed a report (the "Examiner's Report")[42] recommending estimation of the claim for $ 30,648,721. [43]

At the February 7 status conference to consider procedures for estimation and FieldTurf's Stay Relief Motion, AstroTurf, the Committee, and FieldTurf

---

[40] Tr. Nov. 1 [Case Doc. 288] at 89, lines 7 – 14.
[41] Tr. Nov. 1 [Case Doc. 288] at 89, line 21 – 90, line 2.
[42] Report and Recommendation of the Special Purpose Examiner Pursuant to the Order of the Bankruptcy Court Entered on 22 September 2016 [Case Doc. 334].
[43] The estimated amount is higher than the jury verdict because the estimation takes account of interest and attorney's fees that the jury verdict did not include.

announced that they had agreed not to oppose estimation of the claim in the amount
that the Examiner recommended.[44]

The Court announced that, assuming no other party filed a timely objection to
the Examiner's Report, it would enter an order allowing the claim as the Examiner
estimated it.[45]  No other party filed an objection to the Examiner's Report, and the
Court entered an order[46] estimating FieldTurf's claim for $30,648,721.

## I. Further proceedings with regard to FieldTurf's Stay Relief Motion and the filing of this adversary proceeding

With regard to FieldTurf's Stay Relief Motion, AstroTurf and TMA at the
February 7 hearing asserted renewed opposition to termination of the automatic
stay, and TMA advised the Court of the filing of this adversary proceeding – the
evening before the hearing[47] – requesting that this Court decide whether FieldTurf's
Original Complaint filed in the Patent Case and any other complaint that FieldTurf
might file violated the settlement agreement and the Settlement Order.[48]

With regard to termination of the stay, the Court at the February 7 hearing
gave the parties additional time to file briefs with regard to the stay issue.[49]

---

[44] Tr. Feb. 7 [Case Doc. 341] at 5 – 7.
[45] Tr. Feb. 7 [Case Doc. 341] at 24-26.
[46] Order Estimating and Allowing the Claim of FieldTurf (Feb. 21, 2017) [Case Doc. 354].
[47] The complaint was filed at 5:06 p.m. on February 6, 2017.
[48] Tr. Feb. 7 [Case Doc. 341] at 16, lines 7 – 24.
[49] Tr. Feb. 7 [Case Doc. 341] at 24-26.

FieldTurf,[50] AstroTurf,[51] and TMA[52] filed written arguments in support of their positions on termination of the stay.

In its Order entered on March 30, 2017 (the "Stay Order"),[53] the Court lifted the automatic stay in the Patent Case.  The Court explained that the only parties with a substantive economic interest in whether the stay should remain in effect were FieldTurf and the TMA Parties[54] and that no bankruptcy purpose existed for continuation of the automatic stay in the Patent Case.[55]  The Court concluded that these considerations provided cause for termination of the automatic stay under 11 U.S.C. § 362(d) and rejected the argument that the stay should remain in effect until the Court resolved the question of whether FieldTurf had Specific Claims that it could assert.[56]

With regard to that issue, the Stay Order observed:[57]

Whether considerations other than the automatic stay permit or require this Court to decide that it should or must determine whether FieldTurf is asserting claims in the Patent Case that are general claims

---

[50] FieldTurf's Supplemental Brief in Support of FieldTurf's Motion for Relief From Stay [Case Doc. 349].

[51] Debtor's Supplemental Objection to [FieldTurf's] Motion for Relief From the [Case Doc. 350].

[52] Textile Management Associates, Inc.'s Supplemental Objection and Brief in Continued Opposition to FieldTurf USA, Inc.'s Motion for Relief From the Stay [Case Doc. 351].

[53] Order on Motion of FieldTurf, USA, Inc., and Tarkett, Inc. for Relief From Automatic Stay (Mar. 30, 2017)  [Case Doc. 390], 2017 WL 119469.

[54] Stay Order [Case Doc. 390] at 16-17, 20.  The Stay Order refers to the TMA Parties as the "Equity Owners."

[55] Stay Order [Case Doc. 390] at 17.

[56] Stay Order [Case Doc. 390] at 21-22.

[57] Stay Order [Case Doc. 390] at 22-23 (footnote omitted).

remains an issue for determination in the TMA Adversary Proceeding.

The Court emphasizes that it is not determining that issue here.  It will

not have to if, as FieldTurf insists, the revised pleadings in the Patent

Case that it will now be permitted to file assert only specific claims.

At the November 1 hearing, counsel for FieldTurf stated, "We

are very happy to have the stay relief order insofar as it involves these

parties specify that we're only allowed to proceed on specific alter ego

claims and not general alter ego claims."  The Court concludes that

such a limitation is appropriate and will limit the termination of the

stay accordingly.

## J.  FieldTurf's revised supplemental complaint

After the Court lifted the stay, FieldTurf on April 14, 2017, filed in the Patent

Case a revised "Combined Motion to Reopen the Case and for Leave to File a

Supplemental Complaint that Joins Additional Defendants under Fed. R. Civ. P.

15(D) and 21" (the "Revised Motion").[58]   The Revised Motion seeks leave to file a

revised supplemental complaint (the "Revised Complaint").[59]

---

[58] A copy is attached as Exhibit "A" to FieldTurf's Reply Brief [Adv. Doc. 15, part 2].
[59] A copy is attached as Exhibit "B" to FieldTurf's Reply Brief [Adv. Doc. 15, part 3].  A redline comparing the Revised Complaint to the original one is attached as Exhibit "C".  FieldTurf's Reply Brief [Adv. Doc. 15, part 4].

FieldTurf asserts that its Revised Complaint alleges Specific Claims.[60]  The TMA Parties contend that the Revised Complaint still states no claims that are cognizable under Georgia law as Specific Claims.[61]

## II.  Claims of the TMA Parties

The TMA Parties' complaint states two related claims.  The first claim asserts that FieldTurf's assertion of General Claims in its Original Motion and Original Complaint in the Patent Case, and its failure to withdraw them, breached the settlement agreement and violated the Settlement Order.[62]  The first claim also asserts that FieldTurf cannot state any Specific Claim in a revised pleading because no factual basis exists for any such claim.  The Complaint requests that the Court require FieldTurf to specifically state its revised claims to permit the Court to determine whether, in fact and law, the claims are Specific Claims and to enjoin FieldTurf from proceeding to assert any claims until the Court has made the determination.[63]

The second claim is a request for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.[64]  Based on the allegations that FieldTurf cannot state any Specific Claims because there is no factual basis for

---

[60] FieldTurf's Reply Brief [Adv. Doc. 15].
[61] TMA Parties' Surreply Brief [Adv. Doc. 17].
[62] Complaint [Adv. Doc. 1] ¶¶42-46.
[63] Complaint [Adv. Doc. 1] ¶ 41.
[64] Complaint [Adv. Doc. 1] ¶¶ 47-54.

them, the TMA Parties seek a declaratory judgment that the claims FieldTurf

asserted in the Original Complaint, or that it might assert in any other pleading filed

in this Court, the District Court, or any other court are General Claims.[65]  They also

seek related injunctive relief.[66]

The TMA Parties filed their complaint before the Court lifted the stay and

before FieldTurf filed the Revised Complaint.  At that time the complaint's

allegations with regard to what FieldTurf *might* file were surely anticipatory and

speculative – FieldTurf had not yet filed a revised complaint because it couldn't in

view of the Court's ruling that stayed all matters in the Patent Case.  It is arguable

that a request for anticipatory relief fails to state a claim on which relief can be

granted.[67]

Since the filing of the TMA Parties' complaint, FieldTurf filed its Revised

Motion and its Revised Complaint that pleads the claims it asserts are Special

Claims.  FieldTurf's statement of what it contends are Specific Claims is now

before the Court,[68] and the parties have addressed them.[69]

---

[65] Complaint [Adv. Doc. 1] ¶¶ 51-52.

[66] Complaint [Adv. Doc. 1] ¶ 55(A), (B), (D).

[67] The Court indicated as such at the hearing on the Stay Relief Motion.  See  Tr. Nov. 1 [Case Doc. 288] at 89, line 21 – 90, line 2 (quoted *supra* Part III(G)).

[68] Copies of the Revised Motion and of the Revised Complaint are attached as Exhibits "A" and "B" to FieldTurf's Reply Brief, and a redline comparing the Revised Complaint to the Original Complaint is attached as Exhibit "C".  [Adv. Doc. 15, parts 2, 3, and 4].

[69] FieldTurf's Reply Brief at 12-15 [Adv. Doc. 15 at 13-16]; TMA Parties' Surreply Brief at 6-10 [Adv. Doc. 17 at 6-10].

FieldTurf's filing of the Revised Complaint in the Patent Case has two effects. First, it renders moot the request that FieldTurf be required to plead its Specific Claims. Second, the filing eliminates the speculative and anticipatory nature of the TMA Parties' complaint.

Although the TMA Parties have not moved to amend or supplement their complaint to allege that the Revised Complaint asserts General Claims in violation of the Settlement Order, the existing complaint sufficiently alleges that FieldTurf does not have any Specific Claim and adequately requests a declaratory judgment to establish that.

It is clear that the claim of the TMA Parties in this adversary proceeding is that the Revised Complaint states only General Claims in breach of the settlement agreement and in violation of the Settlement Order. The Court, therefore, will treat the TMA Parties' complaint as including a claim that FieldTurf's Revised Complaint breaches the settlement agreement and violates the Settlement Order by asserting General Claims and as seeking a declaratory judgment to that effect and related relief.

The primary relief the TMA Parties seek in their complaint is a declaratory judgment that FieldTurf is asserting General Claims that have been released and a permanent injunction against FieldTurf's prosecution of alter ego or veil-piercing claims because it does not have any. In addition, the complaint seeks attorney's

fees and costs and "other and further relief to which [the TMA Parties] are lawfully entitled."[70]  Although the complaint does not specifically pray for damages for breach of the settlement agreement and violation of the Settlement Order, the complaint alleges that the TMA Parties have incurred damages and will incur additional damages if the Court does not enjoin FieldTurf.[71]

## III.  Failure to State a Claim for Relief

The Court concludes in Part III(C) that the TMA Parties' complaint states a plausible claim that FieldTurf is asserting General Claims in violation of the Settlement Order on account of which the TMA Parties are  entitled to a declaratory judgment under 28 U.S.C. § 2201 and to related relief such as an injunction under 28 U.S.C. § 2202.

The Court concludes that the complaint does not state any other plausible claim for FieldTurf's breach of the settlement agreement (Part III(A)), FieldTurf's violation of the Settlement Order by failing to dismiss the Original Motion in the Patent Case (Part III(B)), or for any relief other than declaratory relief based on FieldTurf's assertion of claims in its Revised Complaint (Part III(D)).

### A.  Claim for breach of the settlement agreement

As an initial matter, the Court concludes that FieldTurf cannot breach the settlement agreement itself for the simple reason that it is not a party to it.  It has no

---

[70] Complaint ¶ 55(F) [Adv. Doc. 1 at 15].
[71] Complaint ¶ 45 [Adv. Doc. 1 at 13].

contractual duty to perform in accordance with its terms.  Accordingly, the complaint fails to state a claim on which relief can be granted to the extent it alleges that FieldTurf breached the settlement agreement.

## B.  Claim for FieldTurf's violation of the Settlement Order by filing and failing to withdraw Original Motion

FieldTurf  is, however, bound by the Settlement Order to the extent that it determined that AstroTurf, to the exclusion of FieldTurf (and other creditors), owned the General Claims and approved the release of the TMA Parties from any liability on General Claims.  The Settlement Order represents a binding and enforceable ruling that FieldTurf does not own, and cannot assert, General Claims.

This Part considers whether FieldTurf violated the Settlement Order by failing to withdraw its Original Motion and Original Complaint in the Patent Case. Of course, the filing of the Original Motion could not have violated the Settlement Order because that filing occurred before its entry.

When the Court deferred consideration in August of AstroTurf's Stay Enforcement Motion (at the hearing at which it ruled on the Sale Motion and the Settlement Motion), when the Court made its initial ruling in November on FieldTurf's Stay Relief Motion, and, indeed, at all times prior to the filing of the TMA Parties' complaint, the universal understanding of all of the parties in AstroTurf's bankruptcy case and of the Court was that the Original Motion and

29

Original Complaint were going nowhere in the Patent Case. Like everyone else in

AstroTurf's case, the TMA Parties knew that FieldTurf was not prosecuting the

Original Motion and did not intend to go forward to assert alter ego and veil-

piercing claims until it filed revised pleadings.

To the extent that the TMA Parties' complaint seeks relief on the theory that

FieldTurf's failure to withdraw the Original Motion violated the Settlement Order

because it was prosecuting claims that had been released, it seeks relief with regard

to conduct in which FieldTurf was not engaged after entry of the Settlement Order.

And the complaint alleges no facts to suggest that FieldTurf  otherwise prosecuted

any claims against the TMA Parties after the Court ruled that AstroTurf could

release General Claims and entered the Settlement Order before the Court

terminated the automatic stay to permit FieldTurf to do so.

It is not possible to characterize FieldTurf's mere failure to withdraw the

Original Motion and Original Complaint in the Patent Case as a violation of the

Settlement Order. The Court lifted the stay on March 30, 2017, a ruling that was

automatically stayed for 14 days.  Fed. R. Bankr. P. 4001(a)(3).  FieldTurf filed its

revised pleading in the Patent Case on April 14, 2017, and that pleading makes it

clear that FieldTurf did not intend to proceed under the Original Complaint.

The allegations in the TMA Parties' complaint that FieldTurf violated the

Settlement Order by filing the Original Motion or by failing to withdraw it,

therefore, do not state a claim on which relief can be granted and must be

dismissed.

## C. Claim for declaratory and injunctive relief based on FieldTurf's lack of any Specific Claim

As construed by the Court in Part II, the TMA Parties' Complaint seeks

declaratory and related injunctive relief based on the allegations that FieldTurf, as a

matter of fact and law, does not have any Specific Claim.[72]

To survive a motion to dismiss for failure to state a claim on which relief can

be granted under Fed. R. Civ. P. 12(b)(6), *applicable under* Fed. R. Bankr. P. 7012,

a complaint must contain sufficient factual matter, accepted as true, to state a claim

for relief that is plausible on its face.[73]

Under Georgia law, an alter ego or veil-piercing claim that a creditor can

assert (*i.e.,* a Specific Claim) is a claim that is "specific to that creditor, as opposed

to being a general claim, 'common to all creditors.'" *Johnson v. Allied Recycling,

Inc.,* 323 Ga. App. 427,  746 S.E.2d 728, 733 (2013), *quoting In re Icarus Holding,*

391 F.3d 1315, 1321 (11th Cir. 2004).  Allegations that the defendants "acted for the

specific purpose of avoiding [the entity's] liability to [the creditor], rather than to

avoid [the entity's] liability to all its creditors, in general" are sufficient to state a

---

[72] TMA Parties' Surreply Brief [Adv. Doc. 15] at 6-10.
[73] *E.g., Aschroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1927 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Specific Claim. *Johnson,* 746 S.E.2d at 734. The key feature that distinguishes between a Specific Claim and a General Claim under Georgia law is the purpose of the defendants' actions. This is a question of fact.

FieldTurf acknowledges that it cannot prosecute General Claims, but argues that its Revised Complaint asserts Specific Claims. Asserting Specific Claims, however, is different from having them.

The TMA Parties contend that FieldTurf's allegedly Specific Claims are actually General Claims. Sufficient factual allegations support their contention that they did not have the purpose that characterizes a Specific Claim under Georgia law and that, therefore, FieldTurf cannot proceed in the Patent Case – or in any other court – to assert any claims because they have been released. This plausible claim gives the TMA Parties a plausible claim for a declaratory judgment under 28 U.S.C. § 2201that FieldTurf does not have any Specific Claims and to related injunctive relief under 28 U.S.C. § 2202.

To the extent that the TMA Parties' complaint seeks declaratory and related relief, it states a claim on which relief can be granted. FieldTurf's motion to dismiss this claim under Rule 12(b)(6) must be denied.

## D.  Claims for other relief based on FieldTurf's violation of the Settlement Order

The Court next considers whether the TMA Parties have a claim for other relief, such as attorney's fees and damages, if they prevail on their claim that FieldTurf has no Specific Claim.

It is axiomatic that, if a court eventually determines on the merits that FieldTurf has no Specific Claims, FieldTurf has asserted General Claims.  In that sense, the prosecution of General Claims "violates" the Settlement Order.

If this is the ultimate determination, the question is whether such a violation of the Settlement Order gives the TMA Parties a right to any relief other than the determination that FieldTurf does not have a Specific Claim.

The Settlement Order confirms that the TMA Parties  are entitled to the benefit of the releases in the settlement agreement and makes the releases enforceable against nondebtor third parties such as FieldTurf.  It states that no creditor "shall be entitled to assert any causes of action against the Released Parties based on any of the Released Claims [which includes General Claims] based on any of the Released Claims."[74]

---

[74] Settlement Order [Case Doc. 224] § 5.

But the Settlement Order then immediately states that "the Released Claims do not include any Specific Claims."[75]  So the Settlement Order expressly provides that FieldTurf can assert Specific Claims, a consequence that the Court specifically intended and relied on in approving the settlement because it did not affect FieldTurf's rights to assert Specific Claims.[76]  Moreover, the Settlement Order does not distinguish between General Claims and Specific Claims beyond reciting the definition of the two terms in accordance with applicable Georgia law.  In particular, it did not purport to determine whether Field Turf did or did not have Specific Claims.

The purpose and effect of the language in the Settlement Order with regard to the release of General Claims and the exclusion of Specific Claims from the release were to preserve the rights of FieldTurf to prosecute Specific Claims.  As a matter of common sense, the preservation of FieldTurf's ability to assert Specific Claims, without addressing whether FieldTurf in law and in fact has them, necessarily means that ultimate determination of the issue will occur at a later time in another proceeding, possibly before another court.

In this regard, the Court notes that section 5 of the settlement agreement states that the parties to the agreement "acknowledge, agree and specifically intend that the releases granted pursuant to this Agreement shall be interpreted by the

---

[75] Settlement Order [Case Doc. 224] § 5.
[76] See *supra* Part III(C).

Parties, *any court*, arbitrator, tribunal or other person or entity having cause to

interpret and/or enforce this Agreement to provide the broadest release of the

Released Claims and the Committee Released Claims possible under the state and

federal law of the United States and the law of any country."[77]  This expansive

definition of potential tribunals shows that the parties to the settlement, including

TMA, anticipated litigation over the application of the release in a later proceeding.

Because the language of the Settlement Order carefully and fully preserves

FieldTurf's rights to assert Specific Claims and contemplates the later litigation of

whether FieldTurf has Specific Claims that are not released, the Settlement Order

cannot mean that FieldTurf violates the Settlement Order merely because a court

later determines that the claims it asserts are actually General Claims.

The context of the proceedings in AstroTurf's Chapter 11 case requires this

interpretation. By the time of the hearing on the proposed settlement, FieldTurf had

filed its Original Motion and Original Complaint in the Patent Case.  The TMA

Parties, the Court, and everyone else actively participating in the case knew that

FieldTurf intended to pursue alter ego and veil-piercing claims in the Patent Case

and that FieldTurf contended that it had Specific Claims that it could assert.

FieldTurf opposed the settlement and the releases for the specific purpose of

preserving its rights to assert Specific Claims.  These circumstances make it

---

[77]  Settlement Agreement § 5 (emphasis added) [Case Doc. 224 at 13].

impossible to conclude that FieldTurf violates the Settlement Order by proceeding

to prosecute Specific Claims, even if a court later concludes that the claims are

actually General Claims that the release bars.

This does not mean that FieldTurf has *carte blanche* to assert anything

against the TMA Parties.  Surely any claim that it asserts must allege facts that state

a colorable Specific Claim.  FieldTurf would violate the Settlement Order if, after

its entry, FieldTurf proceeded to prosecute claims that, although labelled as Specific

Claims, are clearly General Claims.

The Court concludes that FieldTurf's Revised Complaint states a colorable

Specific Claim.  As Part III(C) explains, the key distinguishing feature between a

Specific Claim and a General Claim under Georgia law is whether the defendants

"acted for the specific purpose of avoiding [the entity's] liability to [the creditor],

rather than to avoid [the entity's] liability to all its creditors, in general."  *Johnson v.*

*Allied Recycling, Inc.,* 323 Ga. App. 427,  746 S.E.2d 728, 734 (2013).  The

Revised Complaint contains sufficient allegations with regard to the purpose of the

TMA Parties to state a colorable Specific Claim.[78]

---

[78] See Revised Complaint [Adv. Doc. 15, Part 3] at, e.g., 12-14, 56, 97, 108, 110, 120, 152,
160(a).
    If a creditor's claim alleges indirect harm to a creditor based on a defendant's conduct that
harmed all creditors generally, and if a bankruptcy debtor under applicable law has a claim
against the defendant based on such conduct, then the claim belongs to the bankruptcy estate and
the creditor cannot assert it.  *Bond Safeguard Ins. Co. v. Wells Fargo Bank, N.A.,* 502 Fed. Appx.
867 (11th Cir. 2012) (unpublished).  That is not the situation here, where FieldTurf alleges that the
specific purpose of the TMA Parties was to harm FieldTurf.  Such allegations are sufficient to

As a matter of law, FieldTurf's prosecution of its colorable Specific Claims

does not constitute a violation of the Settlement Order that gives rise to any relief

other that the claim of the TMA Parties for a declaratory judgment that FieldTurf's

claims are actually General Claims and related relief. The Court will grant

FieldTurf's motion to dismiss to the extent the TMA Parties' complaint seeks other

relief.

## E. Conclusion on motion to dismiss for failure to state a claim

For reasons stated above, the TMA Parties' complaint states a claim for a

declaratory judgment under 28 U.S.C. § 2201 that FieldTurf's alter ego and veil-

piercing claims are General Claims, *i.e.,* that FieldTurf does not have any Specific

Claim. If the TMA Parties prevail on this claim, they may be entitled to injunctive

relief under 28 U.S.C. § 2202. The TMA Parties also have a claim for an injunction

against FieldTurf's prosecution of its claims in the Patent Case or elsewhere

pending this Court's determination of the declaratory judgment claim. FieldTurf's

motion to dismiss under Rule 12(b)(6) is denied on these claims.

---

state a colorable Specific Claim under Georgia law that a creditor retains under *Johnson v. Allied Recycling, Inc.,* 323 Ga. App. 427, 746 S.E.2d 728, 734 (2013).

The TMA Parties cite *Avoca Plaintiffs v. Kerr-McGee Oil & Gas Corp. (In re Tronox, Inc.),* 855 F.3d 84, 100 (2d Cir. 2017), for the propositions that a complaint's labelling of its alter ego and veil piercing theories is not conclusive and that, in distinguishing between generalized and specific claims, a court should "inquire into the factual origins of the injury and, more importantly, into the nature of the legal claims asserted." *Id.* at 100, quoting *Picard v. J.P. Morgan Chase & Co. (In re Bernard L. Madoff Investment Securities, LLC),* 740 F.3d 81, 89 (2d Cir. 2014). See TMA Parties Surreply Brief [Adv. Doc. 17] at 7. The Revised Complaint's allegations of fact with regard to the specific purpose of the TMA Parties are sufficient to state a colorable Specific Claim under Georgia law.

All claims for other relief in the TMA Parties' complaint do not state claims on which relief can be granted. The Court will grant FieldTurf's motion to dismiss the other claims under Rule 12(b)(6).

## IV. Exercise of Discretion to Decline to Hear Declaratory Judgment Action or to Abstain Under 28 U.S.C. § 1334(c)(2)

Having concluded that the TMA Parties' complaint states a plausible claim for a declaratory judgment that FieldTurf does not have any Specific Claims and related relief, the Court turns to FieldTurf's contention that the Court should not hear it.[79]

As the Court explains below, a court has discretion to decline to hear an action under the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202.  (Part IV(A)).  The Court in the exercise of its discretion concludes that it should not hear the declaratory action.  Alternatively, the Court in the exercise of its discretion concludes that abstention is appropriate under 28 U.S.C. § 1334(c)(1).  (Part IV(B)).

---

[79] The Court notes that the TMA Parties assert that this Court has exclusive jurisdiction over this dispute because it involves a determination of whether FieldTurf is asserting claims that are property of AstroTurf's estate.  TMA made the same argument in connection with its opposition to termination of the automatic stay.  The Court rejects the argument here for the reasons stated in its order terminating the stay.  Order on Motion of  FieldTurf, Inc., and Tarkett, Inc., for Relief from Automatic Stay, Case No. 16-41504 (Mar. 30, 2017) [Case Doc. 390] at 18-19, 2017 WL 1194649.   The Court has jurisdiction, but it is not exclusive.

## A.  Exercise of discretion under the Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, states that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201 (emphasis added).  The Act confers discretion on federal courts rather than an absolute right for litigants and does not impose a duty on a court to entertain a declaratory judgment action.[80]

### 1.  The "first-filed" rule and the "anticipatory suit exception"

One of the principles governing the exercise of discretion is the "first-filed rule."  It provides that "when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."[81]

The first-filed rule is subject to the "anticipatory suit exception."  It permits litigation to proceed in the later-filed action when "one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum."[82]

---

[80] *E.g., Wilton v. Seven Falls Company*, 515 U.S. 277, 286, 115 S.Ct. 2137 (1998) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173 (1942) ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction."); *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328, 1330-31 (11th Cir. 2005).

[81] *Collegiate Licensing Co. v. American Cas. Co,* 713 F.3d 71, 78 (11th Cir. 2013).

[82] *Id.* at 79, citing *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir. 2005).

FieldTurf contends that it filed its claims against the TMA Parties in the

District Court first and that the first-filed rule requires that the District Court hear

the controversy on the merits.

The TMA Parties counter that this declaratory action is actually the first-filed

one. Their contention, among others,[83] is that the filing in the Patent Case of the

Original Motion that asserted General Claims was an act to exercise control over

property of the estate that violated the automatic stay, 11 U.S.C. § 362(a)(3), and is

therefore void. If the automatic stay makes the Original Motion void, FieldTurf did

not file its claims in the Patent Case against the TMA Parties until April 14, 2017,

which was after the filing of this declaratory action. That would make this

proceeding the first-filed one.

---

[83] The TMA Parties advance two other arguments.

First, they contend that the first-filed rule does not apply because the issues in this declaratory action are different from those in the Patent Case. See *Collegiate Licensing Co. v. American Cas. Co.,* 713 F.3d 71, 78 (11th Cir. 2013) (first-filed rule applies when actions pending in two federal courts involve overlapping issues and parties). The TMA Parties characterize their claims in this adversary proceeding as involving issues of whether FieldTurf is asserting claims that are property of AstroTurf's estate and whether FieldTurf's actions violate the Settlement Order.

The TMA Parties' phrasing of the dispute in bankruptcy terminology does not change the fact that the fundamental issue in the Patent Case and in this declaratory judgment action is the same one between the same parties: Whether FieldTurf's alter-ego and veil-piercing claims against the TMA Parties are Specific Claims that it can assert or General Claims that the release bars.

Second, the TMA Parties assert that FieldTurf's Original Motion in the Patent case does not qualify as a prior action. The theory is that no action is pending against them in the Patent Case because the District Court has not yet permitted the filing of a supplemental complaint.

The absence of a ruling in the Patent Case on the Original Motion makes no difference. The filing of the Original Motion invoked the jurisdiction of the District Court in the Patent Case and was sufficient to establish the District Court as the court "initially seized" of the controversy.

It is unnecessary to determine whether the operation of the automatic stay

makes this the first-filed action because the anticipatory suit exception applies in

any event.[84]

Regardless of whether the filing of the Original Motion is void as a violation

of the automatic stay, the filing clearly put the TMA Parties on notice that FieldTurf

intended to assert claims against them in the Patent Case.  Indeed, the TMA Parties

already knew of FieldTurf's intention to assert such claims based on FieldTurf's

objection to the settlement agreement on the ground that it contained a release that

would bar its claims.  Finally, in the course of FieldTurf's litigation of its objections

---

[84] If the filing of the Original Motion violated the automatic stay, the filing is void and of no
effect under Eleventh Circuit authority.  *E.g., Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d
1306, 1308 (11th Cir. 1982) ("Actions taken in violation of the automatic stay are void and
without effect.").   This Court's ruling that Georgia law applied to FieldTurf's alter ego and veil-
piercing claims, see *supra* Part (I)(E)(1), meant that FieldTurf's Original Motion was asserting
General Claims that the estate owned, an action to exercise control over property of the estate that
violates 11 U.S.C. § 362(a)(3) under *Baille Lumber Co., LLP v. Thompson (In re Icarus Holding
LLC),* 391 F.3d 1315 (11th Cir. 2004), *certified question answered,* 279 Ga. 288, 612 S.E.2d 296
(2005), *ruling after answer,* 413 F.3d 1293 (11th Cir. 2005).  At the time FieldTurf filed the
Original Motion, it contended that Michigan law applied, under which no alter ego or veil-
piercing claims are property of the estate.

  In the circumstances of this case, the Court is concerned that invoking the automatic stay –
which exists to protect AstroTurf and its estate – to change the operation of the first-filed rule is
inconsistent with the automatic stay's purpose and with the general principle that the automatic
stay is a shield, not a sword.  It is particularly troubling when, as here, nondebtor affiliates invoke
the stay as a sword for a strategic advantage in a dispute with another nondebtor.  In appropriate
cases, a court has the authority to validate an otherwise void act by annulling the automatic stay
retroactively.  *E.g., Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d
670, 675 (11th Cir.1984); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th
Cir.1982); *see Litton Loan Servicing v. Rockdale County (In re Howard),* 391 B.R. 511 (Bankr.
N.D. Ga. 2008).

  Because the Court concludes that the anticipatory suit exception applies here, it is
unnecessary to consider whether the Court must or should give effect to the operation of the
automatic stay on FieldTurf's Original Motion for purposes of the determination of which action
is the first-filed one.

to the settlement and the prosecution of its Stay Relief Motion, FieldTurf consistently made it clear that it intended to assert Specific Claims against the TMA Parties, months before they filed this action.

The obvious reason that FieldTurf did not earlier file a revised action against the TMA Parties in the Patent Case before the TMA Parties filed this lawsuit is that this Court ordered it not to. And the Court did so at the insistence, in substantial part, of the TMA Parties.

The Court announced its intention on November 1, 2016, to lift the stay upon estimation of FieldTurf's claim and scheduled a continued hearing on FieldTurf's Stay Relief Motion for the same time as a status conference with regard to the estimation.[85] By the time of that hearing on February 7, 2017, AstroTurf, the Committee, and FieldTurf had agreed not to contest the Examiner's report, so it was likely that termination of the stay – which would permit FieldTurf's prosecution of Specific Claims against the TMA Parties in the Patent Case – was imminent and might even happen at that hearing. The TMA Parties filed this action at 5:06 p.m. on the previous day.

These circumstances establish that the TMA Parties filed this lawsuit in anticipation of imminent litigation against them in the Patent Case.

---

[85] *Supra* Part I(G).

The fact that a declaratory action is an anticipatory suit does not mandate its dismissal; a court may also consider other factors such as (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.[86]

The first five factors support this Court's entertainment of this declaratory action.[87] The TMA Parties are Georgia residents, and many documents and witnesses relevant to FieldTurf's veil-piercing and alter ego claims are likely to be in Georgia where AstroTurf conducted its business. Witnesses who are Georgia residents cannot be compelled to testify at a trial in Michigan. And the TMA Parties allege that one of the FieldTurf parties has its principal place of business in the division of this Court where AstroTurf's case is pending.[88]

---

[86] *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 & n. 1 (11th Cir. 2005); *see Moss & Assocs., LLC v. E. Light Elec. Svcs., Inc.,* 2016 WL 4578144 at * 4 (N.D. Ga. 2016).

[87] Nothing indicates that any of the parties lack the means to litigate in either Georgia or Michigan.

[88] The complaint alleges that FieldTurf USA, Inc., is a Florida corporation with its principal place of business in Dalton, Georgia, and that Tarkett, Inc., is a Canadian corporation with its principal place of business in Montreal, Canada. Complaint [Adv. Doc. 1] ¶¶ 4-5. FieldTurf USA, Inc., alleges that its principal place of business is in Montreal. Revised Complaint [Adv. Doc. 15, part 3] ¶ 16.

But these Georgia connections and the fact that Georgia law governs the dispute[89] do not outweigh the other factors:  FieldTurf's choice of forum, trial efficiency, and the interests of justice.

As the party asserting substantive claims against the TMA Parties, FieldTurf occupies the position of the plaintiff, so its forum choice is entitled to substantial weight.[90]  FieldTurf's choice of the Patent Case as its forum is an appropriate one because the prosecution of its alter ego and veil-piercing claims is an outgrowth of

---

[89] Although the fact that Georgia law governs the dispute between the parties supports litigation in this Court, which frequently deals with questions of Georgia law, the Court is confident that the District Court is equally capable of studying Georgia authorities and applying the law to the facts.

[90] The court in *Moss & Assocs., LLC v. E. Light Elec. Svcs., Inc.,* 2016 WL 4578144 at * 4 (N.D. Ga. 2016), concisely stated the governing principles regarding the forum choice factor:

> In the Eleventh Circuit, there exists a "strong presumption against disturbing plaintiff's initial forum choice." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1100 (11th Cir. 2004). Generally, the plaintiff's choice should not be disturbed unless the balance of private interests is strong in the defendant's favor. *Id.* at 1101. A plaintiff's choice of venue is accorded less weight, however, under two circumstances. First, a plaintiff's forum choice is entitled to less deference where the majority of the operative events occurred in a different district than that which the plaintiff chose. See *Benton v. Crane Merchandising Sys., Inc*., 2013 WL 4779211, at *2 (M.D. Ga. Sept. 5 2013) (citing *A.J. Taft Coal Co. v. Barnhart,* 291 F. Supp. 2d 1290, 1310 (N.D. Ala. 2003); *Bell v. K Mart Corp*., 848 F. Supp. 996, 1000 (N.D. Ga. 1994)). Second, a plaintiff's choice of venue is afforded less weight when a plaintiff files suit outside of its home forum. Wright & Miller, 15 *Fed. Prac. & Proc. Juris.* § 3848 (4th ed.); see also *Spanx, Inc. v. Times Three Clothier, LLC*, 2013 WL 5636684, at *3 (N.D. Ga. Oct. 15, 2013) (citing *In re Link A Media Devices Corp*., 662 F.3d 1221, 1223 (Fed. Cir. 2011) (explaining that the plaintiff's choice of forum is entitled to less deference when plaintiff files suit outside of its home forum)).

Based on the allegations of the TMA Parties, the two circumstances that give less weight to FieldTurf's forum choice are present here.  But the Court concludes that they do not undercut FieldTurf's legitimate selection of the Patent Case as its forum. FieldTurf's choice is entitled to substantial, if not controlling, weight.

the judgment it expects to obtain and because it involves the enforcement of the

District Court's anticipated judgment.

With regard to trial efficiency, the Patent Case is the superior alternative for

two reasons. First, all issues in the dispute between the parties are before the

District Court whereas the declaratory action in this proceeding involves only one

aspect of the liability of the TMA Parties – whether FieldTurf's claims are General

or Specific. Second, FieldTurf in the Patent Case is asserting a patent inducement

claim against the TMA Parties under 35 U.S.C. § 271(b), which is not an issue in

this Court. Prosecution of all of the claims and all aspects of them in the Patent

Case eliminates duplicative proceedings and facilitates discovery and other pretrial

matters.

The interests of justice require that this Court decline to exercise jurisdiction

to permit FieldTurf to litigate in the Patent Case for two primary reasons.

The first arises from the fact that FieldTurf and AstroTurf – owned and

controlled by the TMA Parties – had been litigating in the Patent Case for over five

years before AstroTurf's Chapter 11 filing interrupted it.

The purpose of a Chapter 11 case is to permit a debtor to deal with its

creditors in accordance with the Bankruptcy Code in an orderly manner. Effective

administration of a Chapter 11 case often requires a bankruptcy court to resolve

state law matters involving the debtor, its assets, and the rights of creditors against

the debtor and its assets.  The automatic stay suspends the exercise by creditors of

their collection and other remedies to avoid "races to the courthouse" and the

piecemeal liquidation of assets in distressed sales as a result of foreclosure,

repossession, or judicial levy.  In a liquidation case such as this one, the stay

facilitates an orderly liquidation of assets for market value for the collective benefit

of all creditors and the distribution of proceeds under the priority scheme of the

Bankruptcy Code.

A bankruptcy case often must interfere with the rights of some creditors in

some respects for the benefit of everyone.  But the Bankruptcy Code does not

contemplate interference with the rights of creditors when it would serve no

bankruptcy purpose.

Because a bankruptcy case and the automatic stay should interfere with the

rights of creditors and other parties only to the extent necessary to accomplish a

bankruptcy purpose, a bankruptcy court is not a proper place for the resolution of

private disputes between nondebtor parties that do not affect the administration of

the bankruptcy case and do not have any impact on the interests of any party in

interest in the bankruptcy case.

In AstroTurf's Chapter 11 case, the automatic stay stopped the prosecution of

the Patent Case against AstroTurf and, as events in the Chapter 11 case transpired,

it stopped FieldTurf from pursuing its claims against the TMA Parties in the Patent

Case. If the Court had lifted the automatic stay to permit FieldTurf to proceed in the Patent Case against the TMA Parties earlier, or if it had ruled that the stay did not apply to FieldTurf's prosecution of Special Claims in the Patent Case, FieldTurf's claims against the TMA Parties in the Patent Case in all likelihood would have been the first-filed, and the first-filed rule would have precluded this Court's consideration of this declaratory action.

In this regard, the Court notes that, at the November 1 hearing on FieldTurf's Stay Relief Motion, the Court concluded that no reason existed to stay FieldTurf's prosecution of claims against the TMA Parties but kept it in effect until entry of an order estimating FieldTurf's claim.[91] The Court did so with the understanding that the short continuation of the stay would not prejudice FieldTurf.[92]

The interests of justice do not permit the TMA Parties' strategic invocation of the automatic stay to use the first-filed rule to defeat FieldTurf's rights to prosecute a state law claim against the TMA Parties in the Patent Case.

---

[91] By the time the Court announced its interim ruling on FieldTurf's Stay Relief Motion on November 1, 2016, General Claims had been released. Accordingly, even FieldTurf's prosecution of General Claims would not be an act to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3) because the General Claims no longer existed and could not be property of AstroTurf's estate. Because prosecution of claims against the TMA Parties would not adversely affect the AstroTurf estate in any way, the court concluded that there was no reason to keep the stay in place to prevent FieldTurf from pursuing claims against the TMA Parties. Tr. Nov. 1 [Case Doc. 288] at 84-85.

The Court decided that FieldTurf's claims against the TMA Parties should remain stayed, however, to avoid potential complications that might arise in the Patent Case if the Court lifted the stay for some purposes but not others. See *supra* Part III(G).

[92] Tr. Nov. 1 [Case Doc. 288] at 84, lines 7-10; 86, line 20.

Second, the interests of justice require the Court to take into account the

bankruptcy court's role in the federal judiciary and the proper allocation of

responsibilities between the district courts and the bankruptcy courts.

Litigants in federal courts have a Constitutional right to the adjudication of

state law claims within the jurisdiction of the federal courts in an Article III court.[93]

Congress vested bankruptcy jurisdiction in the district courts[94] and authorized

Article I bankruptcy courts as units of the district courts to exercise the bankruptcy

jurisdiction of the district courts by referral from the district courts.[95]

The bankruptcy jurisdiction of the district courts (usually exercised by the

bankruptcy courts) is intentionally broad to permit the efficient and effective

administration of bankruptcy cases and the prompt and orderly resolution of

disputes that affect parties in a bankruptcy case.  But Congress did not establish

expansive bankruptcy jurisdiction for the purpose of having bankruptcy courts

resolve nonbankruptcy issues that are not necessary to the proper administration of

bankruptcy cases, the application of bankruptcy law, or the interests of parties in the

bankruptcy case.

Because litigants have a Constitutional right to an Article III court's

adjudication of their disputes that are subject to federal jurisdiction and because the

---

[93] *E.g., Stern v. Marshall,* 564 U.S. 462, 482-84, 131 S.Ct. 2596 (2011).
[94] 28 U.S.C. § 1334.
[95] 28 U.S.C. § 157(a).

purpose of the bankruptcy courts is to apply bankruptcy law in bankruptcy cases, the interests of justice are best served if an Article I bankruptcy court declines to exercise its discretionary authority to hear a declaratory action that involves a state law dispute when the dispute is also before an Article III court and no bankruptcy purpose exists for the bankruptcy court to hear the matter.

Both considerations are present here. This declaratory action involves one aspect of a state law dispute that is before an Article III court. The outcome can have no possible effect in AstroTurf's bankruptcy case because FieldTurf's claim has been finally allowed, via estimation, and any claims FieldTurf asserts (even General Claims) have been released and are no longer property of AstroTurf's estate. No one in the bankruptcy case has an economic interest in the dispute except FieldTurf and the TMA Parties.[96] No bankruptcy purpose exists for this Court to get involved in their dispute.[97]

---

[96] As the Court observed in its oral ruling at the November 1 hearing on FieldTurf's Stay Relief Motion, the TMA Parties may have an interest in asserting AstroTurf's interests in the Patent Case because their liability may be based on a judgment against AstroTurf. Tr. Nov. 1 [Case Doc. 288 at 85-86]. But AstroTurf will have no assets at the conclusion of its Chapter 11 case that are not committed to payment of claims, the amount of any judgment in the Patent Case against AstroTurf will not affect what parties receive in AstroTurf's case, and AstroTurf released its claims against the TMA Parties. So AstroTurf has no economic interest in the outcome of any issue in the Patent Case.

[97] The TMA Parties allege a connection between their claims and AstroTurf's bankruptcy case by characterizing their claims as involving issues of whether FieldTurf is asserting claims that are property of AstroTurf's estate and whether FieldTurf's actions violate the Settlement Order.

The TMA Parties' phrasing of the dispute in bankruptcy terminology does not change the fact that the fundamental issue in the Patent Case and in this declaratory judgment action is a question of state law: Whether, under Georgia law, FieldTurf's alter-ego and veil-piercing claims against the TMA Parties are Specific Claims that it can assert or General Claims that the release

49

The Court concludes that the anticipatory suit exception to the first-filed rule

applies here and the circumstances do not warrant this Court's departure from its

application. The Court must decline jurisdiction to hear the declaratory judgment

action under 28 U.S.C. § 2201.

## 2. *Exercise of discretion under Declaratory Judgment Act*

If a declaratory judgment action is first-filed and the anticipatory suit

exception does not apply, the court may nevertheless exercise its discretion to

decline to hear it.[98] The Eleventh Circuit has stated that "compelling

circumstances" must exist to warrant an exception to the first-filed rule.[99]

---

bars. Answering that question does not affect property of the estate in AstroTurf's bankruptcy case – the claims have been released – and does not require any interpretation of the Settlement Order, which does nothing more than state the Georgia law standards for distinguishing them and makes the release of General Claims binding on FieldTurf, a proposition that FieldTurf does not dispute.

[98] *See* 12 MOORE'S FEDERAL PRACTICE ¶ 57.42[2][b] at 57-107 (3d ed. 2016) ("[A] federal court may defer to another federal court by declining to hear the declaratory judgment action even when the declaratory judgment was filed first.").

[99] *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir. 2005). In *Manuel,* the court affirmed the district court's exercise of discretion, as the first-filed court, to hear a declaratory judgment action and rejected the argument that the anticipatory suit exception applied.

Narrowly read, the holding in *Manuel* is that a decision by the first-filed court to hear a declaratory judgment action alleged to be anticipatory is not an abuse of discretion unless compelling circumstances require the first-filed court to apply the anticipatory suit exception. Thus limited, *Manuel* does not require a first-filed court to find "compelling circumstances" to support a discretionary decision to decline jurisdiction. In this regard, the Eleventh Circuit in *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328, 1331 (11th Cir. 2005), in affirming a first-filed court's exercise of discretion to decline to hear a declaratory judgment in favor of a later-filed action in a state court, identified factors that properly guide the exercise of discretion without indicating that "compelling circumstances" must support the determination.

Because the Court concludes that compelling circumstances in this case require it to decline to hear this action, the Court need not address the issue.

In *Wilton v. Seven Falls Company*, 515 U.S. 277, 288, 115 S.Ct. 2137 (1998) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co*., 344 U.S. 237, 243, 73 S.Ct. 236, 239 (1952)), the Supreme Court stated the following with regard to whether a district court should hear a declaratory judgment:  "When all is said and done, . . . 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'"

The Eleventh Circuit in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005), set forth the following nonexclusive list of factors for a district court to consider in deciding whether to exercise its discretion to entertain a declaratory judgment action when a parallel proceeding is pending in a state court:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

> (2) whether the judgment in the federal declaratory action would settle the controversy;

> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

The Supreme Court in *Wilton* addressed discretion under the Declaratory Judgment Act by reference to the "functions and extent of *federal judicial power*." The Eleventh Circuit in *Ameritas* enumerated factors to guide the exercise of discretion in the context of parallel proceedings arising in federal and state courts that involve federalism concerns.

In the bankruptcy context, the proper exercise of discretion under *Wilton* must also address the "functions and extent" of the authority of bankruptcy courts

within the federal judicial system, *i.e.,* the functions and extent of the power of
bankruptcy courts.

Similarly, consideration of the role of the bankruptcy courts in the federal
judicial system replaces the federalism concerns that underlie several of the factors
that the Eleventh Circuit enumerated in *Ameritas.* In this regard, as Part IV(A)(1)
discusses, critical considerations are: (1) one of the federal courts is an Article III
court whereas the other – this one – is an Article I court whose authority is limited
by both statute and the Constitution; and (2) Congress established bankruptcy
courts to facilitate the administration of bankruptcy cases. Just as a federal district
court exercises its discretion to hear a declaratory action with due regard to
federalism concerns, a bankruptcy court properly exercises its discretion with due
regard to its role in the federal judicial system and its bankruptcy purpose.

In the bankruptcy context here, the first, fourth, and fifth *Ameritas* factors
require consideration of the bankruptcy court's role in the federal judiciary and the
proper allocation of responsibilities between the district courts and the bankruptcy
courts. In this proceeding, the same principles discussed in Part IV(A)(1) with
regard to the interests of justice limit this Court's exercise of authority to hearing
matters that are within its proper role: resolution of disputes that involve the
administration of bankruptcy cases, either because they involve issues of

bankruptcy law or because the resolution will affect the rights of parties in the bankruptcy case.

As Part IV(A)(1) explains, resolution of this declaratory action depends solely on application of the Georgia law principle that a creditor retains Specific Claims to determine whether FieldTurf has such claims against the TMA Parties, and no bankruptcy purpose exists for this Court to hear it. Accordingly, sound federal judicial and bankruptcy policies favor litigation in the District Court.

The second and third factors in *Ameritas* likewise support this Court's declining jurisdiction to hear the declaratory judgment action. This adversary proceeding will resolve the dispute only if the Court determines that FieldTurf has no Specific Claim. Because, as Part III(C) explains, it is impossible to resolve this question as a matter of law, the Court can decide this declaratory action only after hearing evidence. Further, hearing the declaratory action involves this Court's determination of some, but not all, issues with regard to the liability of the TMA Parties. Resolution of any issue simplifies litigation, but partial litigation here does not clarify the relationship of the parties any more than litigation of all of the issues in the Patent Case.

The sixth, seventh, and eighth *Ameritas* factors require the Court to consider whether an alternative remedy exists that is better or more effective; whether the underlying factual issues are important to an informed resolution of the matter; and

whether the District Court is in a better position to evaluate those factual issues than this Court.  As just discussed, this Court's determination of the declaratory judgment action will not necessarily resolve the dispute between the parties, and this Court in any event cannot do so without full presentation, development, and determination of factual issues.

This Court is in no better position than the District Court to address the factual issues.  And, again, litigation in the Patent Case is a better alternative than litigation here because the District Court can resolve all issues.

The ninth *Ameritas* factor in the bankruptcy context asks whether there is a close nexus between the underlying factual and legal issues and nonbankruptcy law or public policy, or whether bankruptcy law dictates a resolution of the declaratory judgment action.  This action turns on a pure question of state law, and bankruptcy law has nothing to do with it except for the fact that the Settlement Order approved the release of General Claims and made it binding on FieldTurf.

All of the *Ameritas* factors, tailored to apply in a bankruptcy context, favor resolution of the dispute in the District Court.  What makes them compelling is this bankruptcy court's role in the federal judicial system and the important general principle that bankruptcy proceedings should not interfere with the rights of nondebtor parties in the absence of a bankruptcy purpose for doing so.

The Court will, therefore, exercise its discretion to decline to hear this

declaratory action and will dismiss it.

### 3. Conclusion with regard to exercise of discretion to hear declaratory judgment action under 28 U.S.C. § 2201

The Court concludes that the anticipatory suit exception to the first-filed rule

applies and that the interests of justice require this Court to dismiss this declaratory

judgment action. Alternatively, the Court concludes that compelling circumstances

warrant this Court's exercise of discretion to decline to hear it.

## B. Permissive abstention under 28 U.S.C. § 1334(c)(1)

Under 28 U.S.C. § 1334(c)(1), a bankruptcy court[100] may abstain from

hearing a proceeding "in the interest of justice." A bankruptcy court may abstain on

motion of a party or *sua sponte.*[101] Although FieldTurf has not moved for

---

[100] The statute permits the district court to abstain. District courts have jurisdiction over bankruptcy cases, 28 U.S.C. § 1334(a), and bankruptcy proceedings, 28 U.S.C. § 1334(b). Bankruptcy courts have authority to hear bankruptcy cases and proceedings under 28 U.S.C. § 157(a) by reference from the district courts. The District Court for the Northern District of Georgia has referred bankruptcy cases and proceedings to the District's Bankruptcy Court pursuant to LR 83.7, NDGa.

[101] *E.g., Carver v. Carver (In re Carver),* 954 F.2d 1573 (11th Cir. 1998). The court stated, *id.* at 1579:

> The court may abstain upon request of a party or sua sponte. "The abstention provisions of the [Bankruptcy Code] demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987) (footnote omitted).

permissive abstention under 28 U.S.C. § 1334(c)(1), the Court *sua sponte* concludes that abstention is appropriate in this proceeding.

Courts have identified a number of factors that a bankruptcy court should consider in determining whether to abstain: (1) the effect, or lack thereof, on the efficient administration of the bankruptcy estate if the discretionary abstention is exercised; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of related proceedings commenced in state court or other nonbankruptcy courts; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to the other parties in the action.[102]

---

[102]*See, e.g., BKGD, LLC v. Townsend (In re Smith),* 2017 WL 1322461 at *10 (Bankr. N.D. Ga. 2017); *Roman v. J.P. Morgan Chase Bank, N.A.,* 2013 WL 6911375 at * 4 (Bankr. N.D. Ga.

All of the factors applicable here (1-4, 6, 11-14)[103] favor permissive abstention.  As already discussed, the dispute has nothing to do with the administration of AstroTurf's bankruptcy case (factor 1), its only connection to AstroTurf's bankruptcy case is that the dispute arises from the release that the TMA Parties obtained in it (factor 6), and AstroTurf is not a party (factor 12).  The declaratory action involves only Georgia law that is unsettled in the sense that, although Georgia case law establishes a legal standard to distinguish General and Specific Claims, it provides little guidance on how to apply the standard (factors 2-3).  FieldTurf is prosecuting its claims in the District Court and has requested a jury trial in its Revised Complaint[104] (factors 4, 11), and FieldTurf will be prejudiced by this Court's interference with its rights under applicable nonbankruptcy law to proceed in the forum of its choice (factor 14).

---

2013) (listing first 12 factors); *Queen v. Bank of America, N.A. (In re Queen),* 2013 WL 6116864 at *2 (Bankr. N.D. Ga. 2013) (listing first 12 factors).

[103] The Court has not considered, for purposes of abstaining, whether jurisdiction exists under 28 U.S.C. § 1334 (factor 5) and whether, as the TMA Parties allege, this is a core proceeding under 28 U.S.C. § 157(b) (factor 7).  Complaint [Adv. Doc. 1] ¶ 8.  The Court questions whether the proceeding is a core proceeding in substance in view of the fact that resolution of the dispute cannot possibly affect the administration of this case or the distribution of assets to creditors, for reasons explained in earlier text.

The proceeding involves no bankruptcy matters, so the ability to sever state law claims is not applicable (factor 8).  The burden on this Court's docket is not a consideration (factor 9).

The circumstances may support a conclusion that the TMA Parties are engaged in forum shopping (factor 10), but the Court declines to make a ruling on this issue.  Even if the TMA Parties were motivated to file this adversary proceeding as an appropriate way to seek enforcement of the Settlement Order, the Court concludes that such motivation is insufficient to require the Court to hear this proceeding in view of all of the other factors that make abstention appropriate.

[104] Revised Complaint at 42 [Adv. Doc. 15, part 3 at 43].

58

Comity (factor 13) is typically a concern when abstention arises in the context of an alternative state court proceeding. In this declaratory action, this factor requires consideration of the proper role of a bankruptcy court in the federal judicial system. For reasons discussed in Part IV(A), it is not appropriate for this Court to hear this private dispute that involves no bankruptcy issues and has nothing to do with the results in AstroTurf's bankruptcy case.

The purpose of permissive abstention under 28 U.S.C. § 1334(c)(1) is to "ensure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases."[105] What this means is that a bankruptcy court should abstain from hearing a proceeding that has no bankruptcy purpose. That is the case here.

For all of the foregoing reasons, the Court will abstain under 28 U.S.C. § 1334(c)(1) from hearing the claim of the TMA Parties for declaratory relief.

## V.  Conclusion

1.  FieldTurf's motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6) is **GRANTED in part and DENIED in part.**

The complaint of the TMA Parties states a claim for a declaratory judgment under 28 U.S.C. § 2201 that FieldTurf can assert only General Claims and has no

---

[105] *Queen v. Bank of America, N.A. (In re Queen)*, 2013 WL 6116864, at *2 (Bankr. N.D. Ga. Nov. 18, 2013) (quoting *Graham v. Yoder Machinery Sales (In re Weldon F. Stump & Co.)*, 373 B.R. 823, 828 (Bankr. N.D. Ohio 2007)).

Specific Claims and for injunctive or other relief in connection with such a determination under 28 U.S.C. § 2202.  The Court **DENIES** FieldTurf's motion to dismiss this claim for failure to state a claim on which relief can be granted.  (Part III(C)).

To the extent that the complaint seeks any other relief, the Court **GRANTS** FieldTurf's motion to dismiss for failure to state a claim on which relief can be granted.  (Parts III(A), (B), and (D)).

2.  With regard to the claim of the TMA Parties for a declaratory judgment and other relief under 28 U.S.C. § 2201 and § 2202, the Court **GRANTS** FieldTurf's motion for this Court to exercise its discretion  to dismiss it because the TMA Parties filed the declaratory action in anticipation of imminent litigation against them by FieldTurf  (Part IV(A)(1)) or, alternatively, because, in the interests of justice, compelling circumstances make it inappropriate for this Court to entertain the declaratory action.  (Part IV(A)(2)).  Alternatively, the Court *sua sponte* abstains from hearing the declaratory action under 28 U.S.C. § 1334(c)(1) and will dismiss this claim.  (Part IV(B)).

3.  Based on, and in accordance with, the foregoing, it is hereby **ORDERED** that the complaint of the TMA Parties be, and it hereby is, **DISMISSED.**  The Court will enter a separate judgment.

**This Order has not been prepared for publication and is not intended for publication.  [END OF ORDER]**

**<u>Distribution List</u>**

Laura F. Ketcham
Miller & Martin PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402

Donald J. Aho
Miller & Martin PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402

Ron C. Bingham, II
Adams and Reese, LLP
Suite 450
3424 Peachtree Road, NE
Atlanta, GA 30326

Daniel J. McGuire
Winston & Strawn, LLP
35 W. Wacker Drive
Chicago, IL 60601